IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| **MARY CATHERINE "KATIE" SANCHEZ,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 4:19-CV-00037-DC-DF |
| **PRESIDIO COUNTY, TEXAS** and **FRANCES GARCIA** in her individual capacity, | § § § § | |
| Defendants. | § § | |

### PLAINTIFF'S APPENDIX TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now MARY CATHERINE "KATIE" SANCHEZ, Plaintiff, and files this Appendix to her Response to Defendants' Motion for Summary Judgment pursuant to Local Rule CV-7, and would show the following:

### I. Exhibits

Plaintiff attaches the following exhibits in support of Plaintiff's Response to Defendants' Motion for Summary Judgment:

Ex. A: The deposition testimony of Mary Catherine "Katie" Sanchez, Plaintiff (herein, "Sanchez dep."), with the following exhibits thereto:

  Ex. 3: August 22, 2018 letter from Sanchez to the Presidio County commissioners court;

  Ex. 4: Email correspondence between Sanchez, Defendant Frances Garcia, and Presidio County Commissioner Brenda Bentley;

  Ex. 9: Garcia's request for scheduling agenda item for Presidio County commissioners court meeting of April 11, 2018;

Ex. B: The deposition testimony of Defendant Frances Garcia ("Garcia dep."), with the following exhibits thereto. Plaintiff used consistent exhibit numbering for the deposition exhibits, so these exhibits correspond to the depositions attached as exhibits B, C, and D:

   Ex. 2: Garcia's request for scheduling agenda item for Presidio County commissioners court meeting of April 11, 2018;

   Ex. 8: August 21, 2018 correspondence from the County Attorney of Presidio County;

   Ex. 10: Presidio County adopted budget, 2018-2019;

   Ex. 11: Presidio County adopted budget, 2019-2020;

   Ex. 12: Presidio County adopted budget, 2020-2021; ;

Ex. C: The deposition testimony of Presidio County Judge Cinderela Guevara ("Guevara dep.");

Ex. D: The deposition testimony of Presidio County Commissioner Loretto Vasquez ("Vasquez dep.");

Ex. E: The declaration of Jeanne Hall, the former assistant director in Sanchez's office ("Hall dec."); and

Ex. F: The declaration of Juanita Bishop, a justice of the peace in Presidio County ("Bishop dec.").

Taken as a whole, the evidence raises genuine fact questions for the jury, precluding summary judgment.

## II. Facts.

**A.     Presidio County's creation of the Office of Management and Budget (OMB)**

1. In 2014, an audit of Defendant Presidio County found documents missing in the treasurer's office, and a lack of documentation of how money was expended. (Sanchez dep. p. 39-40, 164-65). As explained by County Judge Cinderela Guevara, the county "was in a big,

huge finance – financial just disorganization[.]" (Guevara dep. p. 9). There was no purchase order or requisition system. (Guevara dep. p. 8). The county was years behind on its account reconciliations. (Guevara dep. p. 9). The tasks assigned to the county treasurer were too much for that office to handle. (Guevara dep. p. 9-10). There was a lack of continuity regarding financial matters as elected officials were replaced with new officials, including compliance with grant requirements. (Sanchez dep. p. 37-40). And because the county lacked policies, it was noncompliant with regulations for state and federal grants. (Guevara dep. p. 9).

2. As a result, the county created the Office of Management and Budget (OMB) department. (Sanchez dep. p. 37-38, 165). The office's role was important, because the county had ongoing problems with criminal activity and mismanagement, including the indictment and imprisonment of the county sheriff, and the indictment and conviction of a county commissioner for bribery and wire fraud. (Sanchez dep. p. 166). The OMB was intended to provide oversight over the treasurer's office, and a check-and-balance between the treasurer and the auditor, to avoid mismanagement, incompetence, or malfeasance. (Sanchez dep. p. 52, 165; Garcia dep. p. 34-35). The OMB, the treasurer, and the auditor were supposed to work together to provide fiscal efficiency and oversight. (Garcia dep. p. 34).

**B.     Plaintiff Katie Sanchez's employment with Presidio County.**

3. Plaintiff Katie Sanchez is a Marfa native, mother of two adult daughters and one young son, and grandmother to one granddaughter. (Sanchez dep. p. 17, 21, 69). She worked for Presidio County for a period of time in the early to mid-1980's. (Sanchez dep. p. 25-26). In the 1990s and 2000s, Sanchez worked in the private sector as a bookkeeper. (Sanchez dep. p. 27). She returned to work for the county in approximately 2011. (Sanchez dep. p. 25-26). At first, she provided contract labor, providing bookkeeping under separate agreements with the tax

assessor and with the then-treasurer. (Sanchez dep. p. 26, 30-32). Her hours varied based on the needs of the county. (Sanchez dep. p. 27-28).

4.      In 2014, Sanchez became a permanent employee of the county, in the OMB. (Sanchez dep. p. 35-36). She was hired as assistant director, and within a year she became its director. (Sanchez dep. p. 37). This was a prestigious position. (Sanchez dep. p. 169). Sanchez managed a budget of more than $100,000. (Sanchez dep. p. 166). She supervised one to two employees. (Sanchez dep. p. 41-42, 166). She had the authority to recommend hiring and firing employees in her department. (Sanchez dep. p. 169-70). She worked with department heads, and reported to the county judge and the commissioners court. (Sanchez dep. p. 36, 48, 166). She attended commissioners court meetings. (Sanchez dep. p. 167).

5.      Sanchez was given discretion in the performance of her duties. (Sanchez dep. p. 167-68). She was involved in purchasing and inventory. (Sanchez dep. p. 49-52, 168). She assisted county departments in obtaining and processing grants, and with grant compliance. (Sanchez dep. p. 50, 168). Her office did not have authority to promulgate county policies, but she did have authority to create procedures. (Sanchez dep. p. 192-93). Her job duties also included reporting financial irregularities or improprieties to the commissioners court. (Sanchez dep. p. 167).

C.      **Sanchez's performance was excellent.**

6.      According to Presidio County Judge Guevara, Sanchez's performance as OMB director was "Excellent. Above average. Truly a cut above the rest." (Guevara dep. p. 13). She was also "very meticulous in recordkeeping." (Guevara dep. p. 13).

7.      Before March 2018, nothing was ever brought up to Sanchez, either in commissioners court meetings or otherwise, suggesting that her position or her department was

in jeopardy. (Sanchez dep. p. 184-85). She was never given any disciplinary action, or anything in writing critical of her performance. (Sanchez dep. p. 68, 185). She was praised by commissioners court. (Sanchez dep. p. 185). Based on her meetings with commissioners court, she was led to believe she was doing a good job. (Sanchez dep. p. 185). There were no write-ups, warnings, or any performance-related criticisms in her personnel file. (Sanchez dep. p. 120).

8. Presidio County Commissioner Loretto Vasquez agrees that he was not aware of any performance problems of Sanchez or the OMB. (Vasquez dep. p. 14). He was not aware of any disciplinary action or counseling of Sanchez while she was OMB director. (Vasquez dep. p. 14). He always found Sanchez to be professional to him and to commissioners court. (Vasquez dep. p. 24).

**D.   With Sanchez as director, the OMB functioned as intended; before August 2018, nobody suggested its elimination.**

9. During Sanchez's tenure, the OMB was working "really well." (Guevara dep. p. 10). It worked to develop and update policies for grant compliance. (Guevara dep. p. 9). It helped the county judge, as chief budget officer of the county, establish policies that should have already been in place. (Guevara dep. p. 11). It worked to bring the county's inventory up to date, which was also a requirement for grant funding. (Guevara dep. p. 10). During the existence of the OMB, the county was able to obtain and maintain compliance with grants it had not previously been awarded. (Sanchez dep. p. 54-55). The county had recently been on the brink of being "broke" because of mismanagement of funds, and even passed deficit budgets; but everything was running smoothly, largely due to the work of the OMB. (Guevara dep. p. 15-16). The treasurer's office, like the rest of the county offices, benefitted from the OMB. (Guevara dep. p. 43). As of 2018, however, there was still much work to be done. (Guevara dep. p. 63).

10. During her tenure with the OMB, Sanchez attended at least 48 commissioners court meetings, which were held at least monthly and sometimes as often as weekly. (Sanchez dep. p. 170). In these meetings, nobody—not any county commissioner, county judge, or county employee—ever raised any issue regarding the cost of the OMB or whether its work was duplicative. (Sanchez dep. p. 170). Nobody ever expressed any concern about the effectiveness of the OMB office. (Sanchez dep. p. 66). Before August 22, 2018, nobody in any commissioners court meeting ever raised any type of discussion about the existence of the OMB department. (Sanchez dep. p. 170-71). Furthermore, before August 2018, nobody every initiated any discussion with County Judge Guevara, the chief budget officer, about possibly eliminating the department. (Guevara dep. p. 14).

11. County Judge Guevara explained that the OMB was doing everything absolutely correctly. (Guevara dep. p. 17). There was no fault in the department. (Guevara dep. p. 17). It would be a huge undertaking to eliminate it. (Guevara dep. p. 17).

**E.   Sanchez exercised her First Amendment right to run for office against Defendant Garcia, the incumbent county treasurer.**

12. In November 2017, Sanchez announced that she was running for the position of county treasurer, against Defendant Frances Garcia. (Sanchez dep. p. 171).

13. The position of county treasurer is created by the Texas Constitution. (Garcia dep. p. 52). As treasurer, Garcia is a department head. (Garcia dep. p. 49). She has important responsibilities, and has discretion in exercising those responsibilities. (Garcia dep. p. 49). By law, her duties include collecting money for the county, and disbursing county funds. (Garcia dep. p. 53). She also has duties regarding recordkeeping and reporting to the commissioners court. (Garcia dep. p. 54). She oversees the county's budget, together with the auditor, which is about $7 million. (Garcia dep. p. 49). The budget for her own office is about $113,000, and she

6

has discretion in spending money from that budget. (Garcia dep. p. 50). According to Garcia, the county commissioners consult her regarding the county's financial matters. (Garcia dep. p. 47). She has input in creating or changing county policies. (Garcia dep. p. 47).

14. Sanchez's decision to run for the position did not affect the operation of Garcia's office. (Garcia dep. p. 58). She did not owe any political allegiance or loyalty to Garcia. (Garcia dep. p. 58). She understood that she had a right to be free from retaliation if she ran for political office. (Sanchez dep. p. 185). Defendants point out that Sanchez also ran against Garcia for the county treasurer position in 2014; but the difference is that Garcia was now running as an incumbent who wanted to keep her position. (Sanchez dep. p. 83, 171). Garcia admittedly knew that participating in the political process, including running for office, was protected by the First Amendment; and that there is a prohibition against retaliating against individuals who run for office. (Garcia dep. p. 40).

**F.    Garcia was hostile to Sanchez's decision to run against her, and threatened to get rid of her.**

15. Garcia admits she wasn't happy that Sanchez was running against her. (Garcia dep. p. 38). In January or February 2018, Garcia told Juanita Bishop, one of the justices of the peace in Presidio County, that she could not believe Sanchez was running against her. (Bishop dec. ¶ 3). She referred to Sanchez as a "*pendeja*," translated by the witness as "dumb ass." (Bishop dec. ¶ 3). Garcia stated that as soon as she won, she would find a way to get rid of Sanchez's position. (Bishop dec. ¶ 3; Sanchez dep. p. 158-59).

16. Sanchez ran a clean campaign—she did not criticize the way Garcia ran the office, instead, she tried to provide education on the way she thought things could be done right. (Sanchez dep. p. 171-72). Sanchez lost the March 2018 primary election by about 120 votes. (Sanchez dep. p. 172).

**G.     After the election, Garcia was hostile towards Sanchez and criticized her to the county judge and commissioners.**

17.     It is important for the OMB and the treasurer's office to have a good working relationship. (Sanchez dep. p. 89). Unfortunately, Sanchez's decision to challenge Garcia for county treasurer created tension between the OMB and the treasurer's office. (Sanchez dep. p. 76-78, 82-83). Before the 2017-18 political campaign, Sanchez and Garcia had been able to work together; but afterwards, there was tension between them. (Sanchez dep. p. 77). Garcia testified that she did not get along with Sanchez any more, and preferred not to even be in the same room with her. (Garcia dep. p. 86).

18.     Garcia made complaints to the county judge about Sanchez, when Sanchez was actually just doing her job. (Guevara dep. p. 24). County Judge Guevara testified that she never saw Sanchez belittle or disrespect Garcia. (Guevara dep. p. 29). But when Sanchez tried to help Garcia, Garcia reacted with offense and disrespect. (Guevara dep. p. 29-31).

19.     Garcia began a course of sending emails critical of Sanchez to a particular county commissioner, Brenda Bentley. (Sanchez dep. p. 99, 173). Prior to the election, Garcia had not sent such emails to Bentley. (Sanchez dep. p. 99). Bentley's responses to Garcia's emails indicated that she was aware of the tension between Garcia and Sanchez. (Sanchez dep. p. 81-82).

20.     Garcia and Bentley were close friends. (Garcia dep. p. 17; Sanchez dep. p. 173-74). Bentley publicly supported Garcia's re-election campaign for county treasurer with a sign in her yard. (Garcia dep. p. 18; Sanchez dep. p. 174).

21.     Bentley was present when Garcia called Sanchez a *pendeja* and stated that when the election was over, she would find a way to get rid of her position. (Bishop dec. ¶ 3).

22.     As one example of the hostile relationship, shortly after the primary election, Garcia demanded that Sanchez provide her with copies of all signed contracts that had been entered into with the county; there were 75 to 100 contracts.  (Sanchez dep. p. 78, 172).  The original contracts were actually maintained in the county clerk's office, not the OMB, and Garcia could have just as easily obtained them from the clerk.  (Sanchez dep. p. 78-79, 173).  Sanchez and the OMB did not have the time to make those copies for Garcia; but did the research to obtain the contracts, and invited Garcia to come to the OMB office and make copies.  (Sanchez dep. p. 78, 80, 173).  Garcia wrote to Sanchez, "Why would I think I could get anything from you," and cc'd Bentley.  (Sanchez dep. ex. 4).

**H.     Garcia retaliated against Sanchez, including attempting to get the commissioners to discharge Sanchez.**

23.     The month after the primary election, Garcia requested the inclusion of an item on the agenda for the commissioners court meeting of April 11, 2018.  (Garcia dep. p. 64-65 & ex. 2).  The item requested the commissioners court to retire to executive session in order to discuss a personnel matter regarding the employment, evaluation, discipline or dismissal of an employee.  (Sanchez dep. p. 174-76 & ex. 9; Garcia dep. ex. 2).  The agenda did not name the employee in question.  (Sanchez dep. p. 175 & ex. 9; Garcia dep. ex. 2).

24.     At that commissioners court meeting, Garcia disclosed that the item referred to Sanchez.  (Sanchez dep. p. 175-76).  Despite the documented fact that she signed the agenda item requesting the commissioners court to consider dismissal of Sanchez, Garcia denies that she was seeking the termination of Sanchez.  (Garcia dep. p. 66-67 & ex. 2).

25.     The county attorney informed Garcia that she did not have the authority to request the termination of Sanchez, because she was not her supervisor.  (Garcia dep. p. 67-68; Sanchez dep. p. 176).  He also informed her that she could not bring the matter to executive session at the

April 11 meeting because the employee needed to be named on the agenda in order to protect her rights. (Sanchez dep. p. 176; Garcia dep. p. 67-68). He further advised that when disputes arose between the departments they should be handled by each other, and then brought to the county judge, before being brought before the commissioners court. (Sanchez dep. p. 91). When Ponton told Garcia she needed to take issues to the county judge as Sanchez's supervisor, Garcia complained that she had done so many times. (Garcia dep. p. 69). Despite the OMB's role as a check-and-balance with the treasurer's office, Garcia complains that Sanchez was "just always getting into my business." (Garcia dep. p. 72).

26. Thereafter, Garcia continued her attempts to retaliate against Sanchez. (Sanchez dep. p. 177). Consistent with the county attorney's instruction, Sanchez asked the county judge for help in resolving disputes between the offices. (Sanchez dep. p. 92). In June 2018, the county judge found it necessary to intervene in the ongoing conflict. (Sanchez dep. p. 177-78). She moved Sanchez and the OMB into the county judge's office. (Sanchez dep. p. 92, 177-78). She told Sanchez that she was trying to protect the OMB. (Sanchez dep. p. 93).

**I.   In August 2018, a lame-duck commissioner, related to Garcia, moved to eliminate the OMB and Sanchez's position, without consulting the county judge.**

27. On or about August 16, 2018, an item was published on the commissioners court agenda for its August 22 meeting, to consider elimination of the OMB. (Sanchez dep. p. 72). This item was placed on the agenda by Commissioner Vasquez. (Sanchez dep. p. 73, 178). Vasquez is related by marriage to Garcia. (Sanchez dep. p. 180; Garcia dep. p. 16). Vasquez admittedly knew that by eliminating the OMB, he would be eliminating Sanchez's position. (Vasquez dep. p. 13).

28. Vasquez knew that Sanchez had run against Garcia for the position of treasurer a few months earlier. (Vasquez dep. p. 13-14). He knew that Sanchez had a First Amendment

10

right to do so.  (Vasquez dep. p. 49).  He knew that there were problems between Sanchez and Garcia.  (Vasquez dep. p. 32).  He also knew that it was unlawful to retaliate against an employee for exercising her First Amendment rights.  (Vasquez dep. p. 50-51).

29. Since Guevara became county judge in 2015, this was the only time anyone has placed the elimination of a department on the commissioners court agenda.  (Guevara dep. p. 14-15).  During his tenure as commissioner, Vasquez never recommended eliminating any other departments or even any positions.  (Vasquez dep. p. 19, 54; Guevara dep. p. 20).  Vasquez was a "lame duck" county commissioner.  (Sanchez dep. p. 178).  He had lost his bid for reelection in the March 2018 primary, meaning his term would expire at the end of 2018.  (Sanchez dep. p. 178).  Based on her four years attending commissioners court meetings as OMB director, Sanchez found it unusual that a lame-duck commissioner proposed elimination of an office just a few months before his term expired.  (Sanchez dep. p. 179).  Guevara also found it odd that Vasquez or any other lame-duck commissioner would propose eliminating any county department on the way out, specifically without talking to her about it.  (Guevara dep. p. 15).

30. The proper protocol would have been for Vasquez to address the item with the county judge, as the county's budget officer, before placing it as an agenda item.  (Guevara dep. p. 14).  Vasquez nonetheless posted the agenda item without talking to her, and chose to have a clerk from the justice of the peace deliver the agenda item to Guevara's office instead of doing so himself.  (Guevara dep. p. 16).  Guevara perceived that he did so because he knew she would not be in favor of it, and would have asked to meet about it.  (Guevara dep. p. 16).

31. The county commissioners then rushed the agenda item to a vote.  (Guevara dep. p. 17).  Putting the matter to a vote without even talking to her about it made County Judge Guevara perceive that it was rushed.  (Guevara dep. p. 17).

11

**J.     The true reason for eliminating the OMB was to eliminate Sanchez.**

32.     Even before the item regarding elimination of the OMB was published on the commissioners court agenda, commissioners approached Jeanne Hall, the OMB assistant director, to tell her that the office would be eliminated, but assure her that she would be protected.  (Sanchez dep. p. 74, 185-86).

33.     Specifically, in late July or early August, Vasquez approached Hall in public and told her, "we are getting rid of the OMB department, but you are ok and will have a job."  (Hall dec. ¶ 3).

34.     About a week later, the week of August 6, Vasquez again approached Hall in public, and told her, "we are putting it on the agenda" but "you are ok," "you will have a job."  (Hall dec. ¶ 4).

35.     On August 12, commissioner Bentley called Hall and left a voicemail message stating she wanted to "ease Hall's mind."  (Hall dec. ¶ 5).

36.     About a week before the August 22 meeting, Garcia herself approached Hall in the county courthouse where they worked, and told her that she had nothing to worry about regarding future employment with the county, stating, "don't worry," "you will have a job."  (Garcia dep. p. 20-21; Hall dec. ¶ 6).  According to Garcia, she communicated this information at the directive of Vasquez.  (Garcia dep. p. 21).  She understood from Vasquez that even if the OMB were eliminated, Hall would have a job.  (Garcia dep. p. 21-22).

37.     Hall told Sanchez about these communications.  (Sanchez dep. p. 74, 185-86).  In contrast to the promises made to Hall, nobody at the county told Sanchez that there was a position available to her.  (Sanchez dep. p. 141-42, 190).  Based on the communications to Hall,

Sanchez understood that the only position that the county was actually looking to eliminate was her own position. (Sanchez dep. p. 186).

38. Hall also told County Judge Guevara about these communications. (Guevara dep. p. 57-58). County Judge Guevara also concluded that the true purpose of eliminating the OMB was to terminate Sanchez. (Guevara dep. p. 58).

**K.  The county judge and the county attorney perceived illegal retaliation**.

39. County Judge Guevara was concerned that the elimination of the OMB could be political retaliation against Sanchez. (Guevara dep. p. 51). One of her specific concerns was political retaliation against Sanchez because she ran for office. (Guevara dep. p. 88). Garcia was able to influence the commissioners. (Guevara dep. p. 84). Garcia was lobbying the commissioners to abolish the OMB. (Guevara dep. p. 83, 84). Notably, Vasquez testified that if Garcia had stated she did not want her office to take any of the OMB duties, the idea of eliminating the office would have died at that point. (Vasquez dep. p. 74).

40. On August 21, 2018, the Presidio County Attorney wrote an opinion letter to the commissioners, on county attorney letterhead. (Garcia dep. p. 89 & ex. 8). He read this letter at the August 22 commissioners court meeting. (Sanchez dep. p. 125; Garcia dep. p. 92). Sanchez did not speak with the county attorney before he wrote the letter. (Sanchez dep. p. 125-26).

41. In his letter, the county attorney recognized that Sanchez exercised her First Amendment right in running for treasurer against Garcia. (Garcia dep. p. 91 & ex. 8). He pointed out that Garcia was then lobbying the county commissioners to abolish the OMB. (Garcia dep. p. 91 & ex. 8). He recognized that abolishing the OMB would effectively terminate Sanchez's employment. (Garcia dep. p. 91 & ex. 8). He analyzed Sanchez's First Amendment rights and the county's potential liability. (Garcia dep. ex. 8). He stated his opinion that the

13

facts could establish the elements of a § 1983 claim on their face. (Garcia dep. ex. 8). He informed the commissioners court that they were facing legal liability if they eliminated the department and terminated Sanchez. (Garcia dep. p. 92 & ex. 8).

42.     According to Garcia, the county attorney did not have any "axe to grind" with her, or any reason to make her look bad. (Garcia dep. p. 91). Garcia understood from reading the county attorney's letter that he believed she was involved in the decision to eliminate the OMB and Sanchez's position. (Garcia dep. p. 90). But Garcia testified that she did not know whether she agreed or disagreed with that analysis. (Garcia dep. p. 92). And when asked whether the timing, a few months after the election, was just a coincidence, Garcia answered, "Possibly. I don't know." (Garcia dep. p. 24).

43.     Vasquez also understood that the county attorney was talking about the county's potential liability, and testified that the commissioners discussed it with him. (Vasquez dep. p. 38-39). Vasquez believed that the county attorney gave good legal advice to the county when asked. (Vasquez dep. p. 34). He is still the county attorney. (Guevara dep. p. 49). The commissioners court relies on his advice and recommendation. (Guevara dep. p. 49).

**L.     Despite being made aware that Sanchez believed she experiencing retaliation and being informed that the retaliation was illegal, the commissioners voted against the county attorney's advice and against the opinions of constituents to eliminate the OMB and Sanchez's position**.

44.     Sanchez addressed the commissioners court at the August 22, 2018 meeting. (Sanchez dep. p. 71-72, 192 & ex. 3). She pointed out that she had never been informed what the issue was from the agenda item placed by Garcia four months earlier, in April; the only issue she knew of between the offices was her decision to run against Garcia. (Sanchez dep. p. 93). She noted that she was not aware of any confusion about responsibilities, or any complaints of

duplication of efforts, other than complaints made by Garcia after the election. (Sanchez dep. p. 93-94).

45.     Sanchez advised the commissioners that she felt the elimination of her department and her position was in retaliation for her decision to run for office against Garcia. (Sanchez dep. p. 184, 192 & ex. 3). She explained that the retaliation had been never-ending, and exhausting. (Sanchez dep. p. 184 & ex. 3). She pointed out that she had approached members of the commissioners court, who were her bosses, but they would not talk to her. (Sanchez dep. p. 184).

46.     At the commissioners court meeting, three members of the public spoke against the elimination of the OMB. (Sanchez dep. p. 126, 180). Specifically, a county commissioner-elect, the publisher of the local newspaper, and the county's emergency management coordinator spoke against it. (Guevara dep. p. 18). The opinions of these constituents were significant. (Guevara dep. p. 18). The commissioner-elect had served previously, and knew how the OMB was bringing the county up to standards. (Guevara dep. p. 19-20). The publisher knew the background of the county's financial woes before the OMB was created. (Guevara dep. p. 19). The emergency management coordinator understood the complexity of the financial records and inventories for purposes of state grants, and how much work had been done to bring the county into compliance. (Guevara dep. p. 18). These constituents spoke to the importance of the OMB, the importance of ensuring grant compliance, the problems with past audits when the OMB was created, the funds that had gone missing from county offices, the fact that a former commissioner had plead guilty to bribery, and the fact that the county could never have too many eyes on its finances. (Sanchez dep. p. 126-30).

47. By contrast, no members of the community spoke in favor of abolishment of the OMB. (Sanchez dep. p. 130; Vasquez dep. p. 47).

48. County Judge Guevara also pointed out how far the county had come with the OMB, and how it was going to come to a halt. (Guevara dep. p. 52).

49. However, commissioners Vasquez and Bentley spoke in favor. (Sanchez dep. p. 180-81). Bentley even recognized at the time that the decision could expose the county to a lawsuit. (Sanchez dep. p. 190). Nonetheless, she indicated she had no reservations about the decision. (Sanchez dep. p. 190).

50. A majority of the commissioners voted in favor of eliminating the OMB; the county judge voted against it. (Sanchez dep. p. 132-33). As a result, Sanchez's department and her position were eliminated. (Sanchez dep. p. 182).

51. This was the only time since Guevara became county judge that the county attorney warned against an action as potentially illegal, and the commissioners ignored his advice. (Guevara dep. p. 49). She was concerned that there is nothing in Presidio County to prevent a commissioners court from ignoring a county attorney and terminating a position of a political opponent in the future. (Guevara dep. p. 61).

**M.   Defendants' claim that the decision was cost-saving is false**.

52. Defendants now claim that the OMB was eliminated as a cost-saving measure. But despite claiming that his objective was to save money, Vasquez had no specific amounts in mind. (Vasquez dep. p. 6). Although she was county treasurer, with duties for collecting and expending funds, Garcia also never had any discussions with anyone at the county about the amount of money it expected to save by eliminating the OMB. (Garcia dep. p. 19, 95-96).

53. County Judge Guevara testified that in fact, a well-functioning Office of Management and Budget saves the county and the taxpayers money. (Guevara dep. p. 13). Sanchez also does not agree that elimination of the OMB actually created cost savings for the county. (Sanchez dep. p. 130). It is important for the county to obtain grants to bring revenue in; it relies substantially on grant revenue. (Guevara dep. p. 20-21). The taxpayers benefit from the grant money that comes in. (Guevara dep. p. 21).

54. Guevara questioned Vasquez's motive. (Guevara dep. p. 46). She responded to Vasquez's submission of the agenda item by adding to the agenda an item to abolish three other departments that were created at the same time as the OMB. (Guevara dep. p. 46-48). Specifically, simultaneously with its creation of the OMB, the county created permanent positions for facilities manager, airports manager, and road and bridge manager. (Sanchez dep. p. 40). Like the OMB, these positions were created to provide the county commissioners with insight about the various county departments. (Sanchez dep. p. 40-41). Vasquez's claimed rationale for eliminating the OMB applied equally to those other departments. (Guevara dep. p. 46-48). Yet Guevara could not even get anyone to make a motion on her item, so there could be no debate among the commissioners on the issue. (Guevara dep. p. 48).

55. After the elimination of the OMB, grants were handled by the auditor (who only serves Presidio County part time). (Guevara dep. p. 21-22). The county lost a grant because its audit was delayed. (Guevara dep. p. 22).

56. The budgets of the treasurer and auditor increased in 2017, 2018, 2019, and 2020. (Garcia dep. p. 100-03 & ex. 10, ex. 11, ex. 12). The Presidio County Commissioners also increased their own salaries in 2018, 2019 and 2020. (Garcia dep. p. 100-03 & ex. 11, ex. 12; Guevara dep. p. 52). None of the commissioners spoke against these pay raises. (Guevara dep.

p. 53). A reasonable juror may question whether cost-cutting was truthfully a matter of concern for the county commissioners.

**N.  Sanchez's position was eliminated; she sought other employment only after the commissioners court voted to eliminate her position.**

57. Based on the vote, Sanchez's position was eliminated effective September 30, 2018. (Sanchez dep. p. 133, 182). It was clear that her position would no longer exist. (Sanchez dep. p. 139). The commissioners did not consider transferring her or placing her in another position with the county. (Sanchez dep. p. 182).

58. Before August 22, 2018, Sanchez did not have any conversations about taking another position, because she was happy with her job. (Sanchez dep. p. 137). She loved what she did. (Sanchez dep. p. 140). She did not have any intention of resigning. (Sanchez dep. p. 162).

59. Defendants' motion for summary judgment claims that Sanchez "admits she voluntarily 'just changed departments[.]'" (Def. m.s.j. ¶ 22). This is false—in her deposition, Sanchez explicitly disagreed with defense counsel's assertion that the change was voluntary. (Sanchez dep. p. 140). She did not want to move to another position, but she was a single mom who needed a job and her benefits. (Sanchez dep. p. 139).

60. Therefore, she independently learned of an opening for the position of jail records clerk, in the county sheriff's department. (Sanchez dep. p. 17-18, 133, 182). She applied and was hired for that position, and started on August 27. (Sanchez dep. p. 133-34).

61. Sanchez's position as jail records clerk did not compare to her previous position as OMB director. (Sanchez dep. p. 183). As OMB director, she had a private office. (Sanchez dep. p. 183). She had windows. (Sanchez dep. p. 183). She had bathrooms. (Sanchez dep. p. 183). In the sheriff's department, she officed at the jail. (Sanchez dep. p. 183). She dealt with

prisoner records eight hours a day.  (Sanchez dep. p. 183).  She shared an 8x10 office with two other women, and the three of them were there constantly.  (Sanchez dep. p. 183).  Every phone call that came in was recorded, no matter how personal.  (Sanchez dep. p. 183).  It was not a good environment.  (Sanchez dep. p. 183).  It was much less prestigious than her position as OMB director.  (Sanchez dep. p. 183).

Sanchez filed this action to recover her damages caused by Defendants' unlawful action in eliminating her position in retaliation for her exercise of her First Amendment right to run for political office.  Based on the facts stated above and the attached summary judgment evidence, and for the reasons stated in Plaintiff's response to Defendants' motion for summary judgment, Defendants' motion should be denied.

Respectfully submitted,

*/s/ John A. Wenke*
**JOHN A. WENKE**
Attorney for Plaintiff
State Bar No. 00788643
501 E. California Ave.
El Paso, Texas 79902
Telephone:  (915) 351-8877
Facsimile:  (915) 351-9955
lawoffice@johnwenke.com

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to Jon Mark Hogg, Jackson Walker, 136 W. Twohig Ave., Suite B. San Angelo, Texas 76903, Attorney for Defendant.

*/s/ John A. Wenke*
**JOHN A. WENKE**