IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| MARY CATHERINE "KATIE" SANCHEZ, §<br>§<br>*Plaintiff*, §<br>§<br>v. §<br>§<br>PRESIDIO COUNTY, TEXAS, and §<br>FRANCES GARCIA, in her individual §<br>capacity, §<br>*Defendants*. § | PE:19-CV-00037-DC-DF |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendants Presidio County, Texas, and Frances Garcia's ("Defendant Garcia") (collectively, "Defendants") Motion for Summary Judgment. (Doc. 15). This case is before the U.S. Magistrate Judge by a standing order of referral from the District Judge pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **DENIED**. (Doc. 15).

### I. BACKGROUND

On July 17, 2019, Plaintiff Mary Catherine "Katie" Sanchez ("Plaintiff") filed this suit for First Amendment retaliation against Defendants. (*See* Doc. 1). Plaintiff alleges that in retaliation for Plaintiff running against Defendant Garcia for public office in Presidio County, Texas, Defendants eliminated Presidio County's Office of Management and Budget ("OMB"), terminating Plaintiff's employment with Presidio County. *Id*. at 3–4.

Plaintiff twice ran against Defendant Garcia for Presidio County Treasurer—first in November 2014 and four years later in 2018. (Doc. 16-2 at 83). After losing the first election in November 2014, Plaintiff applied to and was appointed as the Assistant Director of the OMB. *Id*. at

16–17. The OMB was created in 2014 and was supervised by the Presidio County Commissioners Court (hereafter, "Commissioners Court"). *Id*. at 3, 17. In November 2017, after working for the OMB for three years without incident, Plaintiff announced her candidacy for Presidio County Treasurer. *Id*. at 83. Plaintiff ultimately lost to Defendant Garcia in the March 2018 Democratic Party Primary Election (hereafter, "Primary Election"). *Id*. at 84.

In August 2018, Presidio County Commissioner Loretto Vazquez put a discussion item on the County Commissioners' agenda to eliminate the OMB. (Doc. 16-2 at 35–36). The discussion item sought "discussion with action to abolish the department of Presidio County Office of Management and Budget, OMB, to be effective at the new fiscal year of October 1 of 2018." (Doc. 15-1 at 15). On August 22, 2018, the Commissioners Court voted 4-1 to abolish the OMB for the next fiscal year, effective September 30, 2018. (Doc. 15-2 at 21). After the August 22 meeting, Plaintiff ultimately left her position with the OMB and on August 27, 2018, began working as a jail records clerk in the Presidio County Sheriff's Department. (Doc. 16-2 at 65).

As noted above, Plaintiff filed the instant lawsuit on July 17, 2019. (*See* Doc. 1). Defendants filed the present Motion for Summary Judgment on November 6, 2020. (*See* Doc. 15). On November 18, 2020, Plaintiff filed a Response. (*See* Doc. 16). Defendants filed a Reply on November 25, 2020. (*See* Doc. 18). Accordingly, this matter is ready for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *United States v. Renda*, 709 F.3d 472, 478 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party to point to "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003). Additionally, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247–48). "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Duron v. Albertson's, LLC*, 560 F.3d 288, 291 (5th Cir. 2009) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999)).

The court does not have "a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Evidence that exists in the summary judgment record but is not referred to in the nonmovant's response to the motion for summary judgment is not properly before the court. *Id.*

In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). However, the court may not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. DISCUSSION**

Defendant seeks summary judgment on Plaintiff's complaint for the following four reasons: (1) Plaintiff did not suffer an adverse employment action; (2) Plaintiff cannot establish a causal connection between her political campaign for County Treasurer and the elimination of the OMB; (3) Defendant Garcia was not a final decision maker regarding elimination of the OMB and therefore cannot be individually liable; and (4) Defendant Garcia is entitled to qualified immunity. (Doc. 15 at 1). The undersigned will address each argument in turn.

1. *Adverse Employment Action*

Plaintiff brings this claim pursuant to 42 U.S.C. § 1983. (Doc. 1). "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Caldwell v. Medina*, No. 1:19-CV-524-RP, 2020 WL 4043501, at *9 (W.D. Tex. July 17, 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

In the present Motion for Summary Judgment, the sole issue is whether Plaintiff suffered an adverse employment action. (Doc. 15 at 7). The Fifth Circuit has held that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Pierce v. Tex. Dep't of Crim. Just., Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). In 2006, the Supreme Court held that in the context of Title VII, a plaintiff could demonstrate an adverse employment action by showing "that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006) (internal citations omitted). While the Fifth Circuit has not formally adopted the *Burlington* standard for application to § 1983 First Amendment retaliation claims, case law tends to indicate an acceptance of *Burlington*. *Compare Johnson v. Halstead*, 916

F.3d 410, 422 n.5 (5th Cir. 2019) (explicitly noting Fifth Circuit has not formally adopted *Burlington* for §1983 First Amendment retaliation claims) *with Garrett v. Judson Indep. Sch. Dist.*, 299 F. App'x 337, 346 (5th Cir. 2008) (finding plaintiff stated claim for § 1983 First Amendment retaliation where plaintiff alleged she faced a "campaign of unfounded charges of incompetence" after exercising First Amendment right to free speech). Further, the Western District of Texas has interpreted *Garrett* to indicate that the "Fifth Circuit has impliedly adopted *Burlington*'s [] standard into its [§] 1983 jurisprudence." *Simonelli v. Fitzgerald*, No. CIV. A. SA-07-CA-360, 2009 WL 3806489, at *5 (W.D. Tex. Oct. 22, 2009). Accordingly, this Court will apply the more liberal *Burlington* standard—whether a reasonable employee would have found the challenged action materially adverse—while contemplating whether Plaintiff has raised a fact issue regarding whether she experienced an adverse employment action.

In the present case, Plaintiff asserts that Defendants' decision to terminate the OMB constituted her adverse employment action. (*See* Doc. 1). By their Motion for Summary Judgment, Defendants argue that Plaintiff did not experience an adverse employment action because "[t]here is no evidence that Plaintiff was terminated, discharged, demoted or reprimanded." (Doc. 15 at 7). Defendants predominantly argue that Plaintiff did not experience an adverse employment action because she voluntarily left her position at OMB to change departments within Presidio County prior to the department's eventual elimination. *Id*. at 7–8.

Plaintiff responds that the imminent elimination of the OMB—and consequently the elimination of Plaintiff's position—constituted an adverse employment action. (Doc. 16 at 3–6). Plaintiff argues that her subsequent position as a jail records clerk in the Presidio County Sheriff's Department is irrelevant to determining whether elimination of the OMB constituted an adverse employment action because Plaintiff had a duty to mitigate damages after what would have been her eventual termination. *Id*. at 6. In their Reply, Defendants exclusively provide examples of instances where courts in the Fifth Circuit have found *affirmative* transfers to not constitute adverse

5

employment actions. (*See* Doc. 18 at 5–6). However, the present situation does not involve an organization affirmatively transferring an employee to a different position within the organization but rather an employee who faced termination due to the elimination of the department for which she worked. Therefore, the case law relied on by Defendants is inapposite regarding the present issue.

Applying the *Burlington* standard—whether a reasonable employee would have found the challenged action materially adverse—Plaintiff has undoubtedly raised a fact issue regarding whether she experienced an adverse employment action. Defendants' argument that Plaintiff merely "feared" she would no longer have a job is absurd given that the entire department Plaintiff worked for was being eliminated. (Doc. 15 at 9). The OMB's elimination inherently meant Plaintiff's position would be eliminated. Elimination of one's job is axiomatic of what an employee would consider materially adverse. Therefore, the undersigned agrees with Plaintiff that she experienced an adverse employment action.

2. *Causal Connection Between Political Campaign and Elimination of OMB*

Defendants also contend Plaintiff cannot establish a causal connection between her political campaign for County Treasurer and the elimination of the OMB. (Doc. 15 at 9–16). In order to establish causation in a First Amendment retaliation suit, a "plaintiff must show that [her] protected speech was a substantial or motivating factor in defendants' actions." *Hinojosa*, 2009 WL 1309218, at *7 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Should plaintiff do so, the burden then shifts to defendants to show that they would have terminated plaintiff's employment absent [her] protected speech." *Id*. (citing *Mt. Healthy*, 429 U.S. at 287). However, the Fifth Circuit "has held that summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Haverda v. Hays County*, 723 F.3d 586, 595 (5th Cir. 2013) (citing *Click v. Copeland*, 970 F.2d 106, 113–14 (5th Cir. 1992)) (noting that the Fifth Circuit has held that where a plaintiff produces evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury).

Defendants argue that "Commissioner Vasquez clearly testified that he brought the agenda item to eliminate the OMB in an effort to save money and not because of Plaintiff's campaign against [Defendant] Garcia." (Doc. 15 at 10) (citing Doc. 15-3 at 32–33). Defendants continue that "Commissioner Vasquez made the unilateral decision to put the elimination of the OMB on the agenda without influence from anyone else, including [Defendant] Garcia, and [Commissioner Vasquez's] decision had nothing to do with Plaintiff's political campaign." *Id*. at 11.

In response, Plaintiff points to a variety of evidence that, according to Plaintiff, indicates a retaliatory motive. Plaintiff identifies the County Attorney's letter warning the County Commissioners that eliminating the OMB may constitute First Amendment retaliation against Plaintiff and open the County to suit. (Doc. 16 at 8) (citing Doc. 16-1 at 13). Plaintiff also argues, "[t]he county judge was specifically concerned that the elimination of the OMB could be political retaliation against Sanchez because she ran for office." (Doc. 16 at 8) (citing Doc. 16-1 at 17 (¶ 39, 54)). In support, Plaintiff cites to County Judge Cinderela Guevara's deposition wherein Guevara answered affirmatively when asked whether she had any concerns that the elimination of the OMB *could* have been political retaliation against Plaintiff. (Doc. 16-12 at 11).

It is important to note that most—if not all—of Plaintiff's evidence in support of causation is circumstantial. However, the Fifth Circuit has found that circumstantial evidence creating a chronology from which causation may be inferred is sufficient to create a fact issue in First Amendment retaliation suits. *See Benfield v. Magee*, 945 F.3d 333, 338 (5th Cir. 2019) (citing *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)) (The Fifth Circuit "has . . . allowed plaintiffs to show causation [in a First Amendment retaliation action] by relying on 'a chronology of events from which retaliation may plausibly be inferred'"); *see also Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013). "Courts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted." *Mote v. Walthall*, No. 4:16-CV-00203, 2017 WL 2651705, at *6 (E.D. Tex. June 20, 2017), *aff'd*,

7

902 F.3d 500 (5th Cir. 2018) (citing *Haverda*, 723 F.3d at 595). The causation standard for First Amendment retaliation claims requires "only that protected speech be a 'substantial' or 'motivating' factor in the adverse employment action suffered by the plaintiff." *Mooney*, 538 F. App'x at 453 (citing *Mt. Healthy*, 429 U.S. at 287).

Plaintiff's chronology of events surrounding the OMB's elimination is as follows. Prior to the August 22, 2018 County Commissioners' meeting during which the OMB was eliminated, there had never been any public discussions regarding the superfluity of the OMB. (Doc. 16-1 at 6). However, during the campaign for County Treasurer, Defendant Garcia privately threatened to get rid of Plaintiff's position in a conversation overheard by Justice of the Peace Juanita Bishop. (Doc. 16-15 at 1). Plaintiff asserts that after she lost the primary to Defendant Garcia, Defendant Garcia became "difficult to work with." (Doc. 16 at 9). Plaintiff next points to Defendant Garcia's requested inclusion of an item on the Commissioners Court agenda for the April 11, 2018 meeting. (Doc. 16-1 at 9). The item requested the Commissioners Court to retire to executive session to discuss disciplining an employee; however, the employee's name was never revealed. (Doc. 16-1 at 9).

Plaintiff next points to Defendant Garcia's complaints to County Judge Guevara and County Commissioner Brenda Bentley regarding Plaintiff and the OMB. (Docs. 16-12 at 6; 16-2 at 52, 85). Plaintiff contends that between the Primary Election and the August 22, 2018 Commissioners Court meeting, Defendant Garcia had both the ability to influence the County Commissioners and lobbied the County Commissioners to eliminate the OMB. (Doc. 16 at 9) (citing Doc. 16-12 at 15). Loretto Vasquez, the County Commissioner who listed the agenda item to eliminate the OMB, testified during his deposition he would not have gone through with listing the item had Defendant Garcia not agreed to absorb some of the OMB's functions. (Doc. 16 at 9) (citing Doc. 16-13 at 11).

Judge Guevara further noted during her deposition that it was particularly odd for Commissioner Vasquez to seek elimination of the OMB without first consulting Judge Guevara, especially in light of Presidio County's well documented past financial troubles. (Doc. 16-12 at 4).

8

According to Judge Guevara, this was the first instance since at least 2015 that someone had placed the elimination of a department on the Commissioners Court agenda. *Id*. at 3–4. Additionally, Jeanne Hall—the only other OMB employee aside from Plaintiff—testified via declaration that Defendant Garcia, Commissioner Vasquez, and Commissioner Bentley all separately reached out to Hall to assure her she would not lose her job upon elimination of the OMB. (*See* Doc. 16-14). Plaintiff notes that none of those individuals gave her the same assurance. (Doc. 16 at 10). During the August 22, 2018 Commissioners Court meeting, three members of the community stated that they opposed the elimination of the OMB; no members of the community spoke in favor of the elimination. (Doc. 16-2 at 55). Finally, both Judge Guevara and County Attorney Rod Ponton perceived that the proposed elimination of the OMB was being carried out as an act of retribution towards Plaintiff. (Docs. 16-12 at 9–10; 16-8).

      Defendants take issue with several aspects of Plaintiff's chronology. First, Defendants assert that—as contended in his deposition—Commissioner Vasquez had floated the idea of eliminating the OMB in 2017. (Doc. 15-3 at 6). Defendants also take issue with Plaintiff's characterization that Defendant Garcia was not happy that Plaintiff was running against her. (Doc. 16-1 at 7). However, during Defendant Garcia's deposition, she explicitly stated that she was not happy about Plaintiff running against her. (Doc. 16-6 at 8). Defendants next contend that Plaintiff and Defendant Garcia had issues dating back to at least 2015, therefore Plaintiff's assertion that Defendant Garcia became difficult to work with after the 2018 primary election is false. (Doc. 15-2 at 14–16). Defendant Garcia and Plaintiff's alleged history of animosity does not, however, dispel Plaintiff's assertion that the two individuals' working relationship became increasingly strained after the election. If anything, Defendant Garcia's concession that the two had issues preceding the 2018 primary election *supports* a theory that Defendant Garcia would have been perturbed with Plaintiff for running against her. Defendants further argue that Plaintiff mischaracterized Defendant Garcia and Commissioner Bentley's communications. (Doc. 18 at 3). This becomes a fact issue though as neither party has

9

produced emails verifying or rebutting Plaintiff's assertion that Defendant Garcia began a course of sending emails critical of Plaintiff to Commissioner Bentley. *Id.*

Defendants additionally frame Judge Guevara's testimony regarding the impetus behind elimination of the OMB as merely a belief that "the County Commissioners did not like the checks and balances system imposed by Plaintiff" rather than regarding Plaintiff's First Amendment rights. (Doc. 18 at 2). However, Defendants conveniently neglect to note Judge Guevara's prior testimony wherein she answered "yes" when asked whether she was concerned that the elimination of the OMB could be political retaliation against Plaintiff. (Doc. 16-12 at 11). Defendants go on to identify numerous other perceived issues with Plaintiff's recitation of the facts, however in so doing, Defendants further establish that fact issues abound regarding whether there was a causal connection between Plaintiff's First Amendment activity and the eventual elimination of the OMB. Therefore, Plaintiff has established a causal connection between the elimination of the OMB—Plaintiff's adverse employment action—and Defendants' actions sufficient to survive a summary judgment motion.

### a. Refuting Non-Retaliatory Motive

Irrespective of whether Plaintiff has created a fact issue surrounding causation, Defendants argue that Plaintiff cannot refute Defendants' non-retaliatory motive for eliminating the OMB. (Doc. 15 at 13–14). The Supreme Court has held in First Amendment retaliation suits that "where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and *it is undisputed* that the government would have made the same decision regardless, there is no cognizable injury warranting relief under § 1983." *Texas v. Lesage*, 528 U.S. 18, 21 (1999) (emphasis added). Therefore, Defendants must *prove*—by a preponderance of the evidence[1]—that they would have eliminated the OMB even absent Plaintiff's First Amendment activity. Here, fact

---

[1] *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (finding District Court erred by not determining whether School Board "had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment in the absence of the protected conduct").

issues preclude such a determination at this time.

While Defendants ardently assert that Commissioner Vasquez's decision to propose elimination of the OMB was based solely on budgetary concerns, the competent summary judgment evidence creates fact issues as to the veracity of this claim. Most damning is Judge Guevara's deposition testimony that when faced with Commissioner Vasquez's proposal during the August 22, 2018 meeting, she proposed eliminating additional County departments to no avail. (Doc. 16 at 12) (citing Doc. 16-12 at 10). Further, while Defendants repeatedly assert that elimination of the OMB was done with the intention of saving money, the *only* reference to an actual dollar amount comes from an inference during Plaintiff's deposition. After establishing that the OMB's annual budget was between $100,000 and $110,000, Defendants' Counsel went on to ask Plaintiff "if the OMB was cut, then the County would save over $100,000, correct?" to which Plaintiff responded "yes." (Doc. 15-1 at 17–18). This is a far cry from Commissioner Vasquez establishing that research had been done into the fiscal benefits of eliminating the OMB. For these reasons and in addition to the other factual discrepancies identified throughout this Report and Recommendation, the undersigned finds a genuine dispute of material fact as to Commissioner Vasquez's actual motive behind moving to eliminate the OMB.

### b. County's liability

Finally, Defendants argue that "causation cannot otherwise be imputed against Presidio County." (Doc. 15 at 14). Local government liability under § 1983 arises only when execution of the local government's policy or custom causes the injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Brady v. Fort Bend County*, 145 F.3d 691, 700–02 (5th Cir. 1998) (extending *Monell* liability to counties). "Texas law is clear that the final policymaker for municipal liability purposes is the County Commissioners Court." *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 774–75 (W.D. Tex. 2015) (citing Tex. Loc. Gov't Code § 87.041(a)(10)). "The official policy prong can be met by a single decision by municipal policymakers, so long as the plaintiff demonstrates that the

conduct was deliberate and the moving force behind his injury." *Lloyd*, 127 F. Supp. 3d at 774–75 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Johnson v. Harris County*, No. 4:16-CV-1623, 2018 WL 6505857, at *9 (S.D. Tex. July 31, 2018) (citing *Brown*, 520 U.S. at 404). Further, the Fifth Circuit has held that to establish liability for First Amendment retaliation against a local government, a plaintiff is required to show that a majority of the Board had retaliatory animus. *See Griggs v. Chickasaw County*, 930 F.3d 696, 704 (5th Cir. 2019). However, such retaliatory animus may be inferred from circumstantial evidence as well as temporal proximity of First Amendment activity and the purported retaliatory event. *See Lloyd*, 127 F. Supp. 3d at 762–63; *see also Tompkins v. Vickers*, 26 F.3d at 603, 609 (5th Cir. 1994).

Here, Plaintiff has created a fact issue of whether a majority of the County Commissioners had retaliatory animus against Plaintiff. The August 22, 2018 vote to eliminate the OMB was carried out by Judge Guevara and four County Commissioners: Loretto Vasquez, Brenda Bentley, Jose Cabezuela, and Eloy Aranda. Every County Commissioner voted to eliminate the OMB. Plaintiff's argument that retaliatory motive is attributable to the entire Commissioner's Court hinges on two, separate lines of attack. First, Plaintiff highlights Defendant Garcia's alleged ability to influence the individual commissioners. Plaintiff points to Judge Guevara's deposition testimony wherein Judge Guevara noted that Defendant Garcia did not like Plaintiff and was able to influence the commissioners. (Doc. 16-1 at 13) (citing Doc. 16-12 at 15). Plaintiff further notes that Judge Guevara testified that Defendant Garcia "and others were lobbying the County Commissioners to abolish the OMB." (Doc. 16-12 at 15). Plaintiff also points to the letter County Attorney Rod Ponton provided to the County Commissioners that explicitly stated "[Defendant] Garcia and others are lobbying the County Commissioners to abolish the OMB." (Doc. 16-8 at 1). Second, Plaintiff points to

12

Commissioner Vasquez's deposition testimony wherein Commissioner Vasquez noted he had never publicly contemplated elimination of the OMB prior to the August 2018 measure. (Doc. 16-13 at 3). Commissioner Vasquez had run for reelection as recently as five months prior to the OMB measure being put forward and at no point during his candidacy did he contemplate elimination of the OMB. *Id*. Additionally, if cost savings were the true impetus behind enacting the measure to eliminate the OMB, the pay increases for quite literally every other facet of Presidio County government are problematic. Taking all inferences in a light most favorable to Plaintiff, issues of material fact abound as to whether the County Commissioners were unduly influenced by Defendant Garcia and whether Defendant Garcia's alleged retaliatory animus can be attributed to the County Commissioners.

3. *Causation re: Defendant Garcia*

Defendants also argue Plaintiff cannot establish causation as to Defendant Garcia because she is not a final decision maker. (Doc. 15 at 17–19). Defendants rely on *Johnson v. Louisiana*, a Fifth Circuit decision where the court held that "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." 369 F.3d 826, 831 (5th Cir. 2004), *abrogated by Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018) (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602–605 (5th Cir. 2001)). However, the Fifth Circuit abrogated *Johnson*'s holding in *Sims v. Madisonville*, wherein the court held that "[i]f an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker." 894 F.3d 632, 639; *see also Powers v. Northside Indep. Sch. Dist.*, 951 F.3d at 298, 306–07 (5th Cir. 2020). Therefore, Defendants' reliance on *Johnson* is misplaced in arguing Defendant Garcia cannot, as a matter of law, be held liable for First Amendment retaliation against Plaintiff.

In *Sims*, the Fifth Circuit clarified that whether an individual defendant has final decision-

13

making authority is irrelevant to determining whether that defendant can be held liable for First Amendment retaliation. 894 F.3d at 639. Rather, the plaintiff is merely required to show an "affirmative causal link" between a defendant's activity and the final employment decision. *Id*. (citing *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 758 (5th Cir. 1986)). Here, considering the competent summary judgment evidence in the light most favorable to Plaintiff, such a causal link exists sufficient to survive a motion for summary judgment.

4. *Qualified Immunity*

Finally, Defendants assert Defendant Garcia is entitled to qualified immunity. The Fifth Circuit utilizes a two-prong test to determine if a defendant is entitled to qualified immunity: "(1) whether [a plaintiff has] stated a violation of their First Amendment rights; and if so, (2) whether [the defendant's] conduct was objectively reasonable in light of clearly established law." *Powers*, 951 F.3d at 305–06 (citing *Salas v. Carpenter*, 980 F.2d 299, 305–06 (5th Cir. 1992)). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendant[ ] was objectively unreasonable in the light of that then clearly established law." *Id*. (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998)).

Until very recently, Fifth Circuit law regarding First Amendment retaliation claims was "ambiguous as to whether an individual who recommends an adverse employment decision but is not a final decision-maker can be liable for retaliation under [§] 1983." *Id*. (citing *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015); *Sims*, 894 F.3d at 641). However, as expounded on in the previous section, in 2018 *Sims* clearly established that a non-final decision-maker *can* be liable for retaliation under § 1983 if that individual's animus constitutes a link in the causal chain that leads to a plaintiff's firing. *See Sims*, 894 F.3d at 639. In *Sims*, the Fifth Circuit explicitly stated "today's decision clarifying that *Jett* controls means the law will no longer be 'unsettled'" as to whether an individual other than a final decision maker could be held liable for First Amendment retaliation. *Id*.

at 641. Therefore, because the *Sims* decision was rendered in June 2018 and Plaintiff's alleged constitutional violation took place in August 2018, Plaintiff's constitutional rights were clearly established at the time of the incident. Further, considering all facts in the light most favorable to Plaintiff, Defendant Garcia's actions of allegedly influencing the County Commissioners to eliminate the OMB can be said to be objectively unreasonable for purposes of summary judgment. Accordingly, the undersigned finds Defendant Garcia is not entitled to qualified immunity protection in the instant suit.

## IV. Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **DENIED**. (Doc. 15).

SIGNED this 3rd day of March, 2021.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).