**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **MARY CATHERINE "KATIE" SANCHEZ**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 4:19-CV-00037-DC-DF |
| | § | |
| **PRESIDIO COUNTY, TEXAS** and | § | |
| **FRANCES GARCIA** in her individual capacity, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATIONS**
**OF THE U.S. MAGISTRATE JUDGE**

**TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:**

Comes now MARY CATHERINE "KATIE" SANCHEZ, Plaintiff, and files this Response to Defendants' Objections to the Report and Recommendations of the U.S. Magistrate Judge, and would show the following:

**INTRODUCTION**

Plaintiff Katie Sanchez was the director of the Office of Management and Budget (OMB) for Defendant Presidio County. She exercised her First Amendment right to run for the elective office of county treasurer, against Defendant Frances Garcia, the incumbent treasurer. Garcia pledged during the campaign that as soon as the election was over, she would get rid of Sanchez. True to her word, the month after she won the primary, Garcia placed an item on the county commissioners court agenda to discipline or dismiss Sanchez. The county attorney prevented that particular action from going forward, but Garcia continued to lobby for her termination. A lame-duck county commissioner with ties to Garcia subsequently added an item to the commissioners court agenda to eliminate the OMB, admittedly knowing this would result in the

termination of Sanchez.  Before the vote on that item, Garcia and that same commissioner assured the only other employee in the OMB—but not Sanchez—that she would still have a job with the county.

The County Judge perceived that the elimination of the OMB was intended to retaliate against Sanchez for running against Garcia.  The County Attorney warned the commissioners that passing the measure could be illegal retaliation against Sanchez for protected First Amendment activity.  Nonetheless, the county rushed a vote to eliminate the OMB and Sanchez's position.

Sanchez brings this suit for retaliation based on her exercise of her First Amendment right.  The U.S. Magistrate Judge recommended denial of Defendants' motion for summary judgment.  Defendants object, but their objections ignore evidence contradicting their position, and fail to apply the controlling standard of review.  Defendants' objections should be overruled.

### REVIEW OF MAGISTRATE FINDINGS AND RECOMMENDATIONS

Any party who desires to object to a Magistrate Judge's findings and recommendations must serve and file written objections within 14 days after being served with the findings and recommendations. FED.R.CIV.P. 72(b)(2); U.S. DIST. CT. (W.D. TEX.) LOC. R. Appx. C, Rule 4(a).  Any objections must be specific.  FED.R.CIV.P. 72(b)(2).  When a party properly and timely objects, the Court makes a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made. FED.R.CIV.P. 72(b)(3); *United States v. Sauseda*, 7:09-CR-252(2)-RAJ, 2016 WL 7107913, at *2 (W.D. Tex. Apr. 27, 2016), *quoting* 28 U.S.C. § 636(b)(1).  The Court is not required, however, to consider objections that are frivolous, conclusive, or general in nature. *Sauseda*, 2016 WL 7107913, at *2, *citing Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party who fails to file

timely specific objections waives those objections. *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

## UNOBJECTED-TO FINDINGS AND CONCLUSIONS

The U.S. Magistrate Judge's Report and Recommendations [Doc. 26, cited herein as "R&R"] contains numerous findings and conclusions to which Defendants do not specifically object, and which therefore should be accepted by the Court as correct in reviewing Defendants' objections. Defendants have asserted no specific objection to the following findings and recommendations within the R&R:

1.      The applicable legal standard for determining whether a plaintiff experienced an adverse employment action is the *Burlington* standard, which asks whether a reasonable employee would have found the employer's action materially adverse. *R&R pp. 4-5, citing Burlington Northern & S.F. Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

2.      The OMB's elimination inherently meant Sanchez's position would be eliminated. *R&R p. 6.*

3.      Elimination of one's job is axiomatic of what an employee would consider materially adverse. *R&R p. 6.*

4.      Summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate. *R&R p. 6, citing Haverda v. Hays County*, 723 F.3d 586, 595 (5th Cir. 2013), *and Click v. Copeland*, 970 F.2d 106, 113-14 (5th Cir. 1992).

5.      Circumstantial evidence creating a chronology from which causation may be inferred is sufficient to create a fact issue in First Amendment retaliation suits. *R&R p. 7, citing Benfield v. Magee*, 945 F.3d 333, 338 (5th Cir. 2019); *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997); *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 Fed.Appx. 447, 454 (5th

Cir. 2013).

6.      Courts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted.  *R&R p. 7.*

7.      The causation standard for First Amendment retaliation claims requires "only that protected speech be a 'substantial' or 'motivating' factor in the adverse employment action suffered by the plaintiff." *R&R p. 8, citing Mooney*, 538 Fed.Appx. at 453 (additional citation omitted).

8.      Prior to the August 22, 2018 county commissioners' meeting during which the OMB was eliminated, there had never been any public discussions regarding the superfluity of the OMB.  *R&R p. 8.*

9.      During the contested campaign for county treasurer, Defendant Garcia privately threatened to get rid of Sanchez's position.  *R&R p. 8.*

10.     County Judge Guevara further noted during her deposition that it was particularly odd for Commissioner Vasquez to seek elimination of the OMB without first consulting her, especially in light of Presidio County's well documented past financial troubles.  *R&R p. 8.*

11.     According to County Judge Guevara, this was the first instance since at least 2015 that someone had placed the elimination of a department on the commissioners court agenda. *R&R p. 9.*

12.     Jeanne Hall—the only other OMB employee aside from Sanchez—testified that Defendant Garcia, Commissioner Vasquez, and Commissioner Bentley all separately reached out to Hall to assure her she would not lose her job upon elimination of the OMB.  *R&R p. 9.*

13.     None of those individuals gave Sanchez the same assurance. *R&R p. 9.*

14.     During the August 22, 2018 commissioners court meeting, three members of the

4

community spoke out against the elimination of the OMB; no members of the community spoke in favor of the elimination. *R&R p. 9.*

15.    Both the county judge and the county attorney perceived that the proposed elimination of the OMB was being carried out as an act of retribution towards Sanchez. *R&R p. 9.*

16.    During Defendant Garcia's deposition, she explicitly stated that she was not happy about Sanchez running against her. *R&R p. 9.*

17.    Defendant Garcia and Sanchez's alleged history of animosity does not dispel Sanchez's assertion that the two individuals' working relationship became increasingly strained after the election. *R&R p. 9.*

18.    "Defendants conveniently neglect to note Judge Guevara's prior testimony wherein she answered 'yes' when asked whether she was concerned that the elimination of the OMB could be political retaliation against Plaintiff." *R&R p. 10.*

19.    Most damning is County Judge Guevara's deposition testimony that when faced with Commissioner Vasquez's proposal during the August 22, 2018 meeting, she proposed eliminating additional County departments to no avail. *R&R p. 11.*

20.    "[W]hile Defendants repeatedly assert that elimination of the OMB was done with the intention of saving money, the only reference to an actual dollar amount comes from an inference during Plaintiff's deposition. ... This is a far cry from Commissioner Vasquez establishing that research had been done into the fiscal benefits of eliminating the OMB." *R&R p. 11.*

21.    Texas law is clear that the final policymaker for municipal liability purposes is the county commissioners court. *R&R p. 11.*

22.     Retaliatory animus may be inferred from circumstantial evidence as well as temporal proximity of First Amendment activity and the purported retaliatory event.  *R&R p. 12.*

23.     County Judge Guevara testified that Defendant Garcia did not like Sanchez and was able to influence the commissioners.  *R&R p. 12.*

24.     The county attorney's letter to the county commissioners explicitly stated "Garcia and others are lobbying the County Commissioners to abolish the OMB." *R&R p. 12.*

25.     Commissioner Vasquez testified he had never publicly contemplated elimination of the OMB prior to the August 2018 measure.  *R&R p. 13.*

26.     Commissioner Vasquez had run for reelection as recently as five months prior to the OMB measure being put forward and at no point during his candidacy did he contemplate elimination of the OMB. *R&R p. 13.*

27.     If cost savings were the true impetus behind enacting the measure to eliminate the OMB, the pay increases for quite literally every other facet of Presidio County government are problematic.  *R&R p. 13.*

28.     If an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker.  *R&R p. 13, citing Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018).

29.     Sanchez's constitutional right to be free from retaliation based on her decision to run for office was clearly established at the time of the incident. *R&R p. 15.*

Because of Defendants' failure to specifically and timely object to these findings and conclusions of the U.S. Magistrate Judge, the Court should take them as established.

## REVIEW OF MOTION FOR SUMMARY JUDGMENT

Many of Defendants' Objections are dependent on their version of conflicting evidence. However, under the standard of review controlling Defendants' motion for summary judgment, evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).   Several of Defendants' objections complain that the U.S. Magistrate Judge believed Sanchez's evidence rather than their evidence, arguing that credibility determinations are improper in ruling on a motion for summary judgment. Defendants fail to recognize that "'Credibility determinations have no place in summary judgment proceedings' ***because*** 'non-movants' summary judgment evidence must be taken as true.'"   *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc*., 920 F.3d 958, 964 (5th Cir. 2019), *quoting Koerner v. CMR Constr. & Roofing, LLC* , 910 F.3d 221, 227 (5th Cir. 2018) (emphasis added).   Further, the controlling standard of review requires a Court to "disregard all evidence favorable to the moving party that the jury is not required to believe[.]"   *Viacom Int'l v. IJR Capital Investments, LLC*, 891 F.3d 178, 196 (5th Cir. 2018).   The U.S. Magistrate Judge thus did not err by viewing the evidence in the light most favorable to Sanchez as non-movant, taking her evidence as true, and disregarding contrary evidence proffered by Defendants—this was legally required.

 A party's state of mind is inherently a question of fact which turns on credibility.  *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964.   In cases of retaliation for the exercise of First Amendment rights, "Whether an employee's protected conduct was a substantial or motivating factor in an employer's decision to take action against the employee is a question of fact, ordinarily rendering summary disposition inappropriate."  *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992).

## RESPONSES TO INDIVIDUAL OBJECTIONS

Consistent with Defendants' Objections to the R&R, these Responses will cite to Plaintiff's Response to Defendants' Motion for Summary Judgment, Doc. No. 16 ("Response"); Plaintiff's Factual Appendix thereto, Doc. No. 16-1 ("Facts"). This response cites evidentiary exhibits thereto by document number on the Court's docket ("Doc.").

### Responses to Defendants' Objections Regarding Factual Findings

**Objection 1**. The U.S. Magistrate Judge did not err in writing that before Plaintiff Katie Sanchez announced her candidacy for county treasurer, she worked for the OMB without incident, because abundant evidence in the summary judgment record supports this finding. See generally Facts ¶¶ 6-11; *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964 (non-movants' summary judgment evidence must be taken as true).

Specifically, Sanchez was hired by the OMB in 2014, and became its director within a year. (Deposition of M. Sanchez, Doc. 16-2, p. 35-37). According to Presidio County Judge Guevara, Sanchez's performance as OMB director was "Excellent. Above average. Truly a cut above the rest." (Deposition of C. Guevara, Doc. 16-12, p. 13). She was also "very meticulous in recordkeeping." (Doc. 16-12 p. 13). (Facts ¶ 6).

Before March 2018, nothing was ever brought up to Sanchez, either in commissioners court meetings or otherwise, suggesting that her position or her department was in jeopardy. (Doc. 16-2 p. 184-85). She was never given any disciplinary action, or anything in writing critical of her performance. (Doc. 16-2 p. 68, 185). There were no write-ups, warnings, or any performance-related criticisms in her personnel file. (Doc. 16-2 p. 120). She was praised by commissioners court. (Doc. 16-2 p. 185). Based on her meetings with commissioners court, she was led to believe she was doing a good job. (Doc. 16-2 p. 185). Presidio County Commissioner

Loretto Vasquez agrees that he was not aware of any performance problems of Sanchez or the OMB.  (Deposition of L. Vasquez, Doc. 16-13 p. 14).  He was not aware of any disciplinary action or counseling of Sanchez while she was OMB director.  (Doc. 16-13 p. 14).

In November 2017, Sanchez announced that she was running for the position of county treasurer, against Defendant Frances Garcia.  (Doc. 16-2 p. 171).  Contrary to Defendants' claim that there was preexisting tension between Sanchez and Defendant Garcia, Sanchez testified that before the 2017-18 political campaign, they had been able to work together; but afterwards, there was tension between them.  (Doc. 16-2 p. 77).  See also Facts ¶¶ 15-26.

**Objection 2**.  The U.S. Magistrate Judge did not err in failing to find that Commissioner Vasquez recommended eliminating the OMB before 2017, because the jury is not required to believe Vasquez's self-serving and uncorroborated claim that he did so.  *Viacom Int'l*, 891 F.3d at 196 (movants' summary judgment evidence must be disregarded if a jury is not required to believe it).

Defendants presented no documentary evidence to corroborate Vasquez's claim.  Vasquez vaguely testified that he spoke with another commissioner about the issue, but he could not remember who, in 2017 "more or less," but "probably" about a year before putting it on the agenda.  (Doc. 15-3 [Def Ex. C] pp. 7-8).  Thus, even his own testimony does not conclusively establish that he considered the issue before Sanchez announced her candidacy, which was in November 2017.  (Doc. 16-2 p. 171).

During her tenure with the OMB, Sanchez attended at least 48 commissioners court meetings, which were held at least monthly and sometimes as often as weekly.  (Doc. 16-2 p. 170).  In these meetings, nobody—not any county commissioner, county judge, or county employee—ever raised any issue regarding the cost of the OMB or whether its work was

duplicative.  (Doc. 16-2 p. 170).  Nobody ever expressed any concern about the effectiveness of the OMB office.  (Doc. 16-2 p. 66).  Before August 22, 2018, nobody in any commissioners court meeting ever raised any type of discussion about the existence of the OMB department. (Doc. 16-2 p. 170-71).  Furthermore, before August 2018, nobody every initiated any discussion with County Judge Guevara, the chief budget officer, about possibly eliminating the department. (Doc. 16-12 p. 14).  The jury was not required to believe that Vasquez raised the issue with unspecified persons at some unknown earlier date, so the testimony to this effect must be disregarded in considering Defendants' motion for summary judgment.

### Responses to Defendants' Objections Regarding Adverse Employment Action

**Objection 3**.  The U.S. Magistrate Judge correctly found that the evidence raised a fact issue for the jury as to whether Sanchez experienced an adverse employment action.  An adverse employment action is any action that well might have dissuaded a reasonable worker from engaging in protected activity.  *Burlington Northern & S.F. Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Whether a plaintiff in a First Amendment retaliation suit experienced an adverse employment action is a "factual dispute[] typically decided by a jury."  *Kostic v. Tex. A & M Univ. at Commerce*, 11 F.Supp.3d 699, 715 (N.D. Tex. 2014); *Petrie v. City of Grapevine*, 904 F.Supp.2d 569, 576 (N.D. Tex. 2012), *aff'd*, 546 Fed.Appx. 466 (5th Cir. 2013) (same). Defendants rely on the evidence that after the action at issue, Sanchez sought and obtained another employment position with the county, as a jail file clerk in the sheriff's department, which leads them to mischaracterize the employment action as only a "transfer" and even a "voluntary" decision.  But Defendants ignore the fact that she applied for this action only after the decision at issue, the elimination of her position.

The County decided to eliminate the OMB, thus eliminating Sanchez's position.  (Facts

¶¶ 57-59; see Doc. 16-2 p. 139).  The commissioners did not consider transferring her or placing her in another position with the county.  (Doc. 16-2 p. 182).  Defendants knew the elimination of the OMB would effectively discharge Sanchez:  Vasquez, who placed the item before commissioners court and voted to eliminate the OMB, testified that he knew that by doing so, he would be eliminating Sanchez's position.  (Doc. 16-13 p. 13).  The Presidio County Attorney recognized and informed the commissioners court in writing before its decision that the abolition of the OMB would effectively terminate Sanchez.  (Doc. 16-8).  This elimination of Sanchez's position is the adverse employment action at issue in this case.

Sanchez did not seek any other employment position before the decision at issue.  (Facts ¶ 58; Doc. 16-2 p. 137).  She loved what she did.  (Doc. 16-2 p. 140).  She did not have any intention of resigning.  (Doc. 16-2 p. 162).  Sanchez did not just transfer departments; in her deposition, Sanchez explicitly disagreed with defense counsel's statement that the change was voluntary.  (Doc. 16-2 p. 140).  She did not want to move to another position.  (Doc. 16-2 p. 139).  Legally, she had a duty to exercise reasonable care to mitigate her damages; factually, she was a single mom who needed a job and her benefits.  (Doc. 16-2 p. 139).  Furthermore, Sanchez explained in her testimony how her subsequent position as jail records clerk was much less desirable than her prestigious position as director of OMB.  (Facts ¶ 61; Doc. 16-2 p. 183).

In *Miles v. Beckworth*, a First Amendment retaliation case, the plaintiff was employed by a county as an administrative assistant, but was provided by the county to a state agency.  After the plaintiff's protected conduct, the agency notified the county that it no longer needed it to provide an administrative assistant.  The defendant, the agency's decisionmaker, argued that no adverse employment action occurred, because the plaintiff remained on the county's payroll.  However, the plaintiff asserted that the defendant extinguished her administrative assistant

position, and by abrogating her position, effectively discharged her. The District Court held that the plaintiff adequately plead an adverse employment action. *Miles v. Beckworth*, 2011 WL 13209384, at *3 (E.D. Tex. 2011), *aff'd*, 455 Fed.Appx. 500 (5th Cir. 2011). The Fifth Circuit affirmed that the elimination of the plaintiff's position was an adverse employment action. *Miles v. Beckworth*, 455 Fed.Appx. 500, 504 (5th Cir. 2011).

Discrimination cases under Title VII and other statutes have reached the same conclusion. *See Tratree v. BP N. Am. Pipelines, Inc*., 277 Fed.Appx. 390, 394 (5th Cir. 2008) (plaintiff experienced adverse employment action when his position was eliminated); *Pierre v. RBC Liberty Life Ins*., 2007 WL 2071829, at *7 (M.D. La. 2007) (defendant's decision to close office, thus eliminating plaintiff's duties and position, was adverse employment action); *Moore v. Valic*, 2006 WL 2671941, at *10 (W.D. Tex. 2006) (plaintiff experienced adverse employment action when defendant eliminated her position, resulting in her discharge); *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F.Supp.2d 488, 498 (M.D. La. 2003) (plaintiff suffered an adverse employment action when her position was eliminated). Defendant's mischaracterization of the employment action fails to provide a basis for concluding that no reasonable jury could find that Sanchez experienced an adverse employment action.

**Objection 4**. The U.S. Magistrate Judge correctly stated that the authority cited by Defendants was inapposite. Defendants relied on authority involving transfers. As explained by the U.S. Magistrate Judge, "the present situation does not involve an organization affirmatively transferring an employee to a different position within the organization but rather an employee who faced termination due to the elimination of the department for which she worked." *R&R p. 6*. Defendants' authority is therefore inapposite.

In support of this objection, Defendants cite *Benningfield v. City of Houston*, however,

*Benningfield* predated *Burlington Northern & S.F. Ry. Co. v. White*, 548 U.S. 53 (2006). The Fifth Circuit has not explicitly decided whether *Burlington*'s adverse-employment-action standard applies in First Amendment retaliation cases. *Johnson v. Halstead*, 916 F.3d 410, 422 n. 5 (5th Cir. 2019). However, it appears to have impliedly adopted it; it found that an employee articulated that adverse employment actions were taken against her when she alleged she faced a "campaign of unfounded charges of incompetence" after her protected First Amendment conduct. *Garrett v. Judson Indep. Sch. Dist.*, 299 Fed.Appx. 337, 346 (5th Cir. 2008). Other Circuits have applied the *Burlington* standard to First Amendment retaliation cases. *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1237 (10th Cir. 2009) ("The test in *Burlington Northern* is also consonant with our First Amendment employment retaliation cases."); *see also Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2nd Cir. 2006). A District Court in this District has also applied *Burlington* in the First Amendment retaliation context. *Simonelli v. Fitzgerald,* 2009 WL 3806489, at *5 (W.D. Tex. 2009). Moreover, Defendants have not stated any specific objection to the U.S. Magistrate Judge's holding that the *Burlington* standard applies, and thus waived any such objection. Fed.R.Civ.P. 72. The U.S. Magistrate Judge did not err in finding that the authority cited by Defendants, referring to lateral transfers, is inapposite to the issue of whether, under *Burlington*, a person experiences an adverse employment action when her employer eliminates her position.

**Responses to Defendants' Objections Regarding Causation**

**Objection 5**. The U.S. Magistrate Judge did not err in finding that the chronology of events raised fact issues permitting a reasonable jury to find a causal connection between Sanchez's protected activity in running for office, and Defendant's decision to eliminate her

position.   Whether a decision was motivated by retaliation for First Amendment activity is a "factual dispute[] typically decided by a jury."  *Kostic*, 11 F.Supp.3d at 715; *see also Click*, 970 F.2d at 113.  The Fifth Circuit has recognized in the First Amendment retaliation context that "direct evidence of an improper motive is usually difficult, if not impossible, to obtain.  Thus, requiring direct evidence would effectively insulate from suit public officials who deny an improper motive in cases such as this."  *Tompkins v. Vickers*, 26 F.3d 603, 609 (5th Cir. 1994).

However, "Circumstantial evidence is equally as probative as direct evidence in proving illegitimate intent."  *Id.*  Significantly, both the Presidio County Judge and the Presidio County Attorney recognized that the county was illegally retaliating.  The county judge was specifically concerned that the elimination of the OMB could be political retaliation against Sanchez because she ran for office.  (Facts ¶ 39; Doc. 16-12 p. 51, 88).  The county attorney recognized and warned the commissioners court that its action could constitute unlawful retaliation against Sanchez for her protected First Amendment activity.  (Facts ¶ 40-41; Doc. 16-8).

The chronology of events in this case easily raises fact issues for the jury.  Because Defendants object to the U.S. Magistrate Judge's finding regarding the chronology, Plaintiff must respond by summarizing the relevant chronology:

$   Before Sanchez ran for public office, nobody ever suggested to her the possibility of eliminating the OMB; nobody ever raised the issue in any commissioners court meeting; nobody suggested that the OMB was unnecessary or unproductive; and nobody ever raised the issue with the county judge, who is the county's budget officer.  (Facts ¶ 10). The jury is not required to believe the testimony cited by Defendant, with no documentary support, that Vasquez contemplated the possibility a year earlier.

$   During the campaign, in January or February 2018, Garcia expressed her anger that Sanchez was running against her, and explicitly threatened that she was going to find a way to get rid of Sanchez's position after the election.  (Facts ¶ 15).  *See Click*, 970 F.2d at 113 (considering defendant's threat to terminate plaintiff in context of other evidence in finding jury issue on retaliation).

$   Sanchez lost the primary election in March 2018.  (Facts ¶ 16).   After the primary

election, Garcia became hostile and difficult for Sanchez to work with, although they had been able to work together before. (Facts ¶ 17-19, 22).

$   In April 2018, the month after the primary election, Garcia placed an item on the commissioners court agenda to discipline or terminate Sanchez, even though she had no supervisory authority over Sanchez. (Facts ¶ 23).

$   Garcia complained to the county judge and commissioners about Sanchez, notwithstanding the OMB's role as a check-and-balance with the treasurer's office. (Facts ¶ 18-19, 25-26).

$   In June 2018, the county judge had to move the OMB into her own office, in an effort to protect it. (Facts ¶ 26).

$   Garcia had the ability to influence the county commissioners. (Facts ¶ 39).

$   Garcia lobbied the commissioners to abolish the OMB. (Facts ¶ 39, 41).

$   Commissioner Vasquez, who is related to Garcia by marriage, listed the agenda item to eliminate the OMB and Sanchez's position. Vasquez has never moved to eliminate any other department or position. (Facts ¶ 27, 29).

$   Vasquez testified he would not have gone forward with the decision if Garcia had not agreed to it. (Facts ¶ 39).

$   County Judge Guevara found it unusual that Vasquez added the item to the agenda without speaking to her, as county budget officer, and his decision to do so was inconsistent with protocol. (Facts ¶ 29-30).

$   Prior to the vote on elimination of the OMB, Garcia and Vasquez assured the only other OMB employee that she would not lose her employment with the county when the OMB was eliminated, and commissioner Bentley reached out to the same employee to ease her mind, but they did not offer the same reassurance to Sanchez, leading both Sanchez and County Judge Guevara to conclude that the measure was actually intended only to eliminate Sanchez. (Facts ¶ 32-38).

$   Garcia herself testified she did not know if the timing of the elimination of the OMB, a few months after the election, was just a coincidence. (Facts ¶ 42).

$   Knowledgeable constituents opposed the elimination of the OMB, and none spoke in favor of it. (Facts ¶ 46).

$   County Judge Guevara questioned Vasquez's motive, and perceived that Sanchez was being retaliated against for her protected activity. (Facts ¶ 39, 54).

$   The county attorney recognized and warned the county commissioners that their actions on their face could establish unlawful retaliation. (Facts ¶ 40, 41).

$   The county attorney did not have any reason to try to make Garcia look bad.  Instead of disputing the county attorney's opinion, Garcia testified that she did not know whether she agreed or disagreed with it.  (Facts ¶ 42).

$   Commissioner Bentley recognized that the decision could expose the county to liability, but did not care.  (Facts ¶ 49).

In objecting to the U.S. Magistrate Judge's reliance on this chronology, Defendants complain that the U.S. Magistrate Judge "omitted any findings" that tension existed between Sanchez and Garcia before the ran for office.  But the trier of fact is not required to believe that any preexisting tension was relevant or rose to the level of the later-existing tension, or that any"issues" between them caused efficiency with the treasurer's office before Sanchez announced her candidacy, because of the testimony that Sanchez's decision to challenge Garcia for county treasurer created tension between the OMB and the treasurer's office.  (Doc. 16-2 p. 76-78, 82-83; see Facts ¶¶ 15-26).

Garcia admits she wasn't happy that Sanchez was running against her.  (Doc. 16-6 p. 38).  During the campaign, Garcia stated that she could not believe Sanchez was running against her.  (Declaration of J. Bishop, Doc. 19-1 ¶ 3).  She referred to Sanchez as a "*pendeja*," translated by the witness as "dumb ass."  (Doc. 19-1 ¶ 3).  At that time, Garcia warned that as soon as she won, she would find a way to get rid of Sanchez's position.  (Doc. 19-1 ¶ 3; Doc. 16-2 p. 158-59).  Sanchez testified that before the 2017-18 political campaign, Sanchez and Garcia had been able to work together; but afterwards, there was tension between them.  (Doc. 16-2 p. 77).  After the election, Garcia began a course of sending emails critical of Sanchez to a particular county commissioner, Brenda Bentley.  (Doc. 16-2 p. 99, 173).  Prior to the election, Garcia had not sent such emails to Bentley.  (Doc. 16-2 p. 99).  Garcia testified that in 2018, after the election and after the OMB was moved within the County Judge's office, she did not get along with Sanchez "anymore," and preferred not to even be in the same room with her.  (Deposition of F. Garcia,

16

Doc. 16-6 p. 86). The jury is not required to believe Defendants' self-serving claim that any tension between Garcia and Sanchez was preexisting.

**Objection 6**. The U.S. Magistrate Judge did not err in failing to make findings that Garcia received complaints from other departments. Defendants point to no documented complaints, but only Garcia's self-serving testimony. The jury is not required to believe this testimony, so the controlling standard of review requires that it be disregarded. *Viacom Int'l*, 891 F.3d at 196 (movants' summary judgment evidence must be disregarded if a jury is not required to believe it). Furthermore, Defendants present no evidence or explanation as to how any such complaints, even if they did occur, had anything to do with the decision to eliminate Sanchez's position.

The County Judge testified that during Sanchez's tenure, the OMB was working "really well." (Doc. 16-12 p. 10; see Facts ¶ 9). The treasurer's office, like the rest of the county offices, benefitted from the OMB. (Doc. 16-12 p. 43). Commissioner Vasquez agrees that he was not aware of any performance problems of Sanchez or the OMB. (Doc. 16-13 p. 14). Before March 2018, nothing was ever brought up to Sanchez, either in commissioners court meetings or otherwise, suggesting that her position or her department was in jeopardy. (Doc. 16-2 p. 184-85). She was never given any disciplinary action, or anything in writing critical of her performance. (Doc. 16-2 p. 68, 185). She was praised by commissioners court. (Doc. 16-2 p. 185). Based on her meetings with commissioners court, she was led to believe she was doing a good job. (Doc. 16-2 p. 185). There were no write-ups, warnings, or any performance-related criticisms in her personnel file. (Doc. 16-2 p. 120).

The U.S. Magistrate Judge also did not err in disregarding Vasquez's self-serving testimony that he raised the idea of eliminating the OMB in 2017. *Viacom Int'l*, 891 F.3d at 196.

This is the same complaint as Defendants' objection no. 2, discussed *supra*.

Because paragraph 6 of Defendants' objections is predicated on assertions that a trier of fact is not required to believe, Defendants' reliance on these asserted facts to defeat the inference of causation resulting from the chronology as a whole fails to provide a basis for rejecting the U.S. Magistrate Judge's report and recommendations.

**Objection 7**.   Defendants' objection no. 7 vaguely objects to the Magistrate's "reliance on Plaintiff's mere speculation and opinion." rather than identifying a specific portion of the report and recommendations to which they object.   Rule 72 requires objections to be specific. FED.R.CIV.P. 72(b)(2).   The Court is not required to consider Defendants' general and conclusory objection.   *Sauseda*, 2016 WL 7107913, at *2. Plaintiff disputes that the U.S. Magistrate Judge's report and recommendations is predicated on opinion and speculation. Defendants merely wish the Court to accept their version of the facts rather than the testimony that a trier of fact could believe.   *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964 (non-movants' summary judgment evidence must be taken as true); *Viacom Int'l*, 891 F.3d at 196 (movants' summary judgment evidence must be disregarded if a jury is not required to believe it).

The only specific "example" within Defendants' objection no. 7 is the U.S. Magistrate Judge's statement that a reasonable jury could find Garcia had the ability to influence the County Commissioners and lobbied the Commissioners to eliminate the OMB.   But County Judge Guevara testified that Garcia was able to influence the commissioners.   (Doc. 16-12 p. 84). Guevara also testified that Garcia was lobbying the commissioners to abolish the OMB.   (Doc. 16-12 p. 83, 84). The County Attorney also wrote that Garcia was then lobbying the county commissioners to abolish the OMB.   (Doc. 16-8).       Commissioner Vasquez's testimony

demonstrates that Garcia was able to influence the decision: he testified that if Garcia had stated she did not want her office to take any of the OMB duties, the idea of eliminating the office would have died at that point.  (Doc. 16-13 p. 74).  While a jury might believe Defendants' contrary version of the evidence, it is not obligated to do so.  In addressing Defendants' motion for summary judgment, the U.S. Magistrate Judge correctly resolved conflicting evidence and inferences in favor of Sanchez as non-movant.

### Responses to Defendants' Objections Regarding Refuting Non-Retaliatory Motive

**Objection 8**.  Defendants' objection no. 8 complains that the U.S. Magistrate Judge failed to "give more credence" to their claimed reason for their decision.  This objection again improperly requests the Court to believe their interpretation of the events instead of the evidence presented by Sanchez as non-movant.  *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964; *Viacom Int'l*, 891 F.3d at 196.  The question is not whether an employer hypothetically might make a decision for economic reasons, but whether Defendants actually did so.  A reasonable jury may find that they did not.  (See Facts ¶¶ 52-56).

Abundant evidence raises fact questions for the jury as to whether Defendants actually acted for the claimed economic reason.  County Judge Guevara testified that in fact, a well-functioning Office of Management and Budget saves the county and the taxpayers money.  (Doc. 16-12 p. 13).  It is important for the county to obtain grants to bring revenue in; it relies substantially on grant revenue.  (Doc. 16-12 p. 20-21).  The taxpayers benefit from the grant money that comes in.  (Doc. 16-12 p. 21).  Sanchez also does not agree that elimination of the OMB actually created cost savings for the county.  (Doc. 16-2 p. 130).  Vasquez departed from protocol by not discussing the issue with County Judge Guevara, as the county's budget officer, before placing the issue before commissioners court.  (Doc. 16-12 p. 14-16).  According to

Vasquez, when he proposed the elimination of the OMB, he had no specific amounts in mind. (Doc. 16-13 p. 6).  Although she was county treasurer, with duties for collecting and expending funds, Garcia also never had any discussions with anyone at the county about the amount of money it expected to save by eliminating the OMB.  (Doc. 16-6 p. 19, 95-96).

The county's other actions at the same time further raise fact questions for the jury regarding the truth of the asserted motivation.  Questioning Vasquez's motive, Guevara responded to Vasquez's submission of the agenda item by adding to the agenda an item to abolish three other departments that were created at the same time as the OMB.  (Doc. 16-12 p. 46-48).  Vasquez's claimed rationale for eliminating the OMB applied equally to these other departments.  (Doc. 16-12 p. 46-48).  Yet Guevara could not even get anyone to make a motion on her item, so there could be no debate among the commissioners on the issue.  (Doc. 16-12 p. 48).  Defendants cite to Garcia's self-serving claim that Vasquez stated that "constituents were questioning" why the county had three financial offices.  But the only constituents who spoke at the commissioners' court meeting opposed the elimination of the OMB.  (Doc. 16-12 p. 18-20; Doc. 16-2 p. 126-30, 180; Doc. 16-13 p. 47).  The budgets of the treasurer and auditor increased in 2017, 2018, 2019, and 2020.  (Doc. 16-6 p. 100-03; Doc. 16-9, Doc. 16-10, Doc. 16-11).   The Presidio County Commissioners also increased their own salaries in 2018, 2019 and 2020.  (Doc. 16-6  p. 100-03; Doc. 16-9, Doc. 16-10, Doc. 16-11; Doc. 16-12 p. 52).   None of the commissioners spoke against these pay raises.  (Doc. 16-12 p. 53).  The evidence as a whole raises fact questions for the jury as to whether "economic reasons" truly motivated Defendants.

**Objection 9**.  In objection 9, Defendants complain that the U.S. Magistrate Judge "improperly made credibility determinations of the witnesses and weighed the evidence, which is not proper at the summary judgment stage."  As detailed above, credibility determinations are

not proper at the summary judgment stage *because* non-movants' summary judgment evidence must be taken as true. *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964. Defendants' objection that the U.S. Magistrate Judge should have believed their version of the facts is not a valid objection in this context.

Defendants reiterate Garcia's self-serving claim that she did not harbor any bitterness or ill will towards Sanchez for her decision to run for Garcia's office. The jury is not required to believe this testimony, so it must be disregarded. *Viacom Int'l*, 891 F.3d at 196 (movants' summary judgment evidence must be disregarded if a jury is not required to believe it). Other summary judgment evidence contradicts Garcia's assertion: Garcia admits she wasn't happy that Sanchez was running against her. (Doc. 16-6 p. 38). In January or February 2018, she stated that she could not believe Sanchez was running against her. (Doc. 19-1 ¶ 3). She referred to Sanchez as a "*pendeja*," translated by the witness as "dumb ass." (Doc. 19-1 ¶ 3). Garcia stated that as soon as she won, she would find a way to get rid of Sanchez's position. (Doc. 19-1 ¶ 3; Doc. 16-2 p. 158-59). Garcia tried to make good on this threat the month after the primary election: She requested the inclusion of an item on the agenda for the commissioners court meeting of April 11, 2018. (Doc. 16-6 p. 64-65; Doc. 16-7). The item requested the commissioners court to retire to executive session in order to discuss a personnel matter regarding the employment, evaluation, discipline or dismissal of an employee. (Doc. 16-2 p. 174-76; Doc. 16-7). The agenda did not name the employee in question. (Doc. 16-2 p. 175; Doc. 16-7). At that commissioners court meeting, Garcia disclosed that the item referred to Sanchez. (Doc. 16-2 p. 175-76). Garcia testified that in 2018, she did not get along with Sanchez any more, and preferred not to even be in the same room with her. (Doc. 16-6 p. 86). A reasonable jury may find that Garcia did in fact harbor bitterness or ill will towards Sanchez.

Defendants' objection no. 9 also asserts that the U.S. Magistrate Judge "assumed Plaintiff could or would prove necessary facts to create a fact issue, such as whether research had been done into the fiscal benefits of eliminating the OMB[.]"  The first portion of this sentence is a general, conclusory objection rather than a specific objection, so the Court need not address it. FED.R.CIV.P. 72(b)(2); *Sauseda*, 2016 WL 7107913, at *2.  The second part of the sentence is not an "assumption."  Despite claiming that his objective was to save money, Vasquez had no specific amounts in mind.  (Doc. 16-13 p. 6).  Although she was county treasurer, with duties for collecting and expending funds, Garcia also never had any discussions with anyone at the county about the amount of money it expected to save by eliminating the OMB.  (Doc. 16-6 p. 19, 95-96). The objection provides no basis for granting summary judgment in favor of Defendants.

### Responses to Defendants' Objections Regarding County's Liability

**Objection 10**. In their objection no. 10, Defendants again complain, without specificity, that the U.S. Magistrate Judge's report and recommendations are based on "conclusory allegations and self-serving facts."  They do not explain which facts the U.S. Magistrate Judge should not have considered.  This is another general, conclusory objection rather than a specific objection, so the Court need not address it.  FED.R.CIV.P. 72(b)(2); *Sauseda*, 2016 WL 7107913, at *2.  They also assert that some of the facts relied upon by Sanchez are "directly contradicted in the summary judgment record."  Besides being conclusive and non-specific, this objection fails to apply the controlling standard of review, which requires the Court to accept the non-movant's evidence as true and disregard the movant's evidence if the jury is not required to believe it.  *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964; *Viacom Int'l*, 891 F.3d at 196.

**Objection 11.** Defendants object to the U.S. Magistrate Judge's reference to timing, pointing out that "Timing alone" does not establish retaliation.  But the U.S. Magistrate Judge

did not rely on timing "alone." It is well-established that temporal proximity may be considered along with other evidence of retaliation. *See, e.g., Mooney v. Lafayette County Sch. Dist*., 538 Fed. Appx. 447, 454 (5th Cir. 2013); *Miles v. Beckworth*, 455 Fed. Appx. 500, 504 (5th Cir. 2011) ("the extremely close timing between Miles's testimony at Bledsoe's trial and Beckworth's decision to 'laterally transfer' her upon the conclusion of trial bolsters Miles's First Amendment retaliation claim").

**Objection 12**. In their objection no. 12, Defendants again fail to recognize the controlling standard of review, complaining that the U.S. Magistrate Judge "believed Plaintiff's testimony over Commissioner Loretto Vasquez, which is improper at the summary judgment stage." They cite to no specific portion of the Magistrate's report or the parties' testimony to justify this objection. Again, at the summary judgment stage, the Court is required to believe the testimony of the non-movant and disregard the movant's testimony if a jury is not required to believe it. *Waste Mgmt. of Louisiana, LLC*, 920 F.3d at 964; *Viacom Int'l*, 891 F.3d at 196. Defendants argue that the fact that a different person might have reached a different decision "does not necessarily suggest" that the decision was retaliatory. This is another general, conclusory objection which the Court need not address, not a specific objection. FED.R.CIV.P. 72(b)(2); *Sauseda*, 2016 WL 7107913, at *2. The U.S. Magistrate Judges's report and recommendation did not find a fact issue regarding retaliation based only on evidence that another person "may have reached a different decision," or that any such evidence "necessarily" suggests retaliation. The chronology as a whole in this case certainly raises fact questions for the jury regarding whether Defendants made a retaliatory decision.

**Responses to Objections Regarding Causation re: Defendant Garcia**

**Objection 13**. Defendant's objection no. 13 sets out a series of conclusory complaints

regarding the Magistrate Judge's finding that fact issues exist for the jury as to whether Garcia's animus constituted a link in the chain of causation. Defendants first assert that *Sims v. City of Madisonville* "predicates the link [in the causal chain] on establishing 'unlawful conduct'[,]" and that Sanchez "would still have to establish 'unlawful conduct' by Garcia." Defendant misinterprets *Sims*; the "unlawful conduct" referred to in that opinion is simply taking action which is a link in the chain of causation resulting in an employment action being taken against a person in retaliation for her exercise of First Amendment rights. "If an individual defendant's animus against a coworker's exercise of First Amendment rights is a link in the causal chain that leads to a plaintiff's firing, the individual may be liable even if she is not the final decisionmaker." *Sims v. City of Madisonville*, 894 F.3d 632, 639 (5th Cir. 2018).

Defendants mistakenly argue that the only evidence of "animus" is that "tension" existed between Garcia and Sanchez. As discussed in response to Defendant's objection no. 5, <u>supra</u>, the evidence raises fact issues as to whether this tension arose after Sanchez's protected First Amendment activity. Besides this workplace hostility, Garcia stated that she could not believe Sanchez was running against her. (Doc. 19-1 ¶ 3). She referred to Sanchez as a "*pendeja*," translated by the witness as "dumb ass." (Doc. 19-1 ¶ 3). She threatened that as soon as she won re-election, she would find a way to get rid of Sanchez's position. (Doc. 19-1 ¶ 3; Doc. 16-2 p. 158-59). The evidence raises fact issues for the jury as to whether Garcia bore animus against Sanchez because of her decision to run against her.

Defendants further argue that Garcia's animus towards Sanchez did not impact Vasquez's decision to propose elimination of the OMB. The chronology as a whole raises fact issues allowing the jury to reject this claim. (See response to objection no. 5, *supra*). The month after the primary election, Garcia tried to cause the commissioners court to discipline or discharge

Sanchez.     (Facts ¶¶ 23-24; see   Doc. 16-2 p. 174-76; Doc. 16-6 p. 64-67; Doc. 16-7).

Thereafter, she continued to complain about Sanchez to the commissioners and county judge,

and she lobbied for the elimination of Sanchez's position.     (Facts ¶¶ 18-19, 25, 39, 41).

According to commissioner Vasquez, the decision would not have gone forward without

Garcia's approval.   (Doc. 16-13 p. 74).  And Garcia was involved in assuring the other OMB

employee, but not Sanchez, that she would be taken care of after the elimination of the OMB.

(Facts ¶¶ 32-37; Declaration of J. Hall, Doc. 16-14 ¶¶ 3-6; Doc. 16-6 p. 20-22; Doc. 16-2 p. 74,

141-42, 185-86, 190).  A reasonable jury may reject Defendants' interpretation of the evidence.

**Objection 14.** Defendant's objection no. 14 mischaracterizes the finding that Garcia

influenced the County Commissioners to eliminate the OMB as "unsupported."  County Judge

Guevara testified that Garcia was able to influence the commissioners.  (Doc. 16-12 p. 84).  She

testified that Garcia lobbied for the elimination of Sanchez's position.  (Doc. 16-12 p. 84, 91)

The County Attorney also wrote that Garcia was then lobbying the county commissioners to

abolish the OMB.  (Doc. 16-8).    According to commissioner Vasquez, the decision would not

have gone forward without Garcia's approval.    (Doc. 16-13 p. 74).  He testified that if Garcia

had stated she did not want her office to take any of the OMB duties, the idea of eliminating the

office would have died at that point.  (Doc. 16-13 p. 74).  Viewed by the controlling standard of

review, the evidence raises fact issues permitting a reasonable jury to find that Garcia influenced

the county commissioners to eliminate Sanchez's position.

## CONCLUSION

When viewed by the controlling standard of review, the U.S. Magistrate Judge's findings

and recommendations are well-supported by the summary judgment evidence and applicable

law.  Defendants' objections depend on their own version of the events rather than the evidence

as viewed by the controlling legal standard.  For all of these reasons, Defendants' objections to the U.S. Magistrate Judge's Report and Recommendations should be overruled.

Respectfully submitted,

*/s/ John A. Wenke*
**JOHN A. WENKE**
Attorney for Plaintiff
State Bar No. 00788643
501 E. California Ave.
El Paso, Texas 79902
Telephone:  (915) 351-8877
Facsimile:  (915) 351-9955
lawoffice@johnwenke.com
ATTORNEY FOR PLAINTIFF

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to Jon Mark Hogg, Jackson Walker, 136 W. Twohig Ave., Suite B. San Angelo, Texas 76903, Attorney for Defendants.

*/s/ John A. Wenke*
**JOHN A. WENKE**