IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| MARY CATHERINE "KATIE" SANCHEZ, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 4:19-CV-00037 |
| PRESIDIO COUNTY, TEXAS and FRANCES GARCIA in her individual capacity, | § § § § | |
| Defendants | § | |

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT PRESIDIO COUNTY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Presidio County, Texas files this Reply to Plaintiff's Response to Defendant Presidio County's Motion for Judgment Notwithstanding the Verdict (the "Response") and respectfully shows the Court as follows:

**A. PLAINTIFF'S INTERPRETATION OF THE PLEADING REQUIREMENTS IS TOO RIGID**

At the outset, Plaintiff's Response attempts to prohibit Presidio County's ability to seek post-verdict relief by contending certain arguments were not properly raised at trial. Plaintiff asserts Presidio County is not entitled to judgement based on the theory of retaliatory motive because such arguments were not asserted by Presidio County in its pre-verdict motion for directed verdict. To the contrary, Presidio County's Motion for Directed Verdict directly argued the Commissioners Court did not have retaliatory motive in voting to eliminate the OMB. Specifically, Presidio County asserted the Commissioners Court "has the statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget," "the evidence presented during Plaintiff's case in chief establishes the Presidio County Commissioners Court

has final budgetary approval in accordance with Texas law," and "the decision to eliminate the OMB occurred during the budgetary decision-making process." *See* Defendant Presidio County's Motion for Directed Verdict, pp. 6-7. Presidio County further asserted that neither of the two commissioners who testified at trial provided any evidence to support Plaintiff's retaliatory theory and in fact established the Commissioners Court's decision was based on cost-saving measures for Presidio County.

Plaintiff's interpretation of the procedural requirements is too rigid. Under Fifth Circuit precedent, the purpose of Rule 50(b) is to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of and to alert the opposing party to the insufficiency before the case is submitted to the jury. *Bohrer v. Haynes Corp.*, 715 F.2d 213, 217 (5th Cir. 1979); *see also Villanueva v. McInnis*, 723 F.2d 414, 417 (5th Cir. 1984). Plaintiff cannot genuinely dispute that whether the Commissioners Court had sufficient retaliatory motive was not raised in Presidio County's Motion for Directed Verdict or throughout all the briefing during the entirety of this case. As such, allowing Presidio County to seek a judgment as a matter of law on the issue of retaliatory motive "does not thwart the purposes of Rule 50(b)." *Giles v. GE*, 245 F.3d 474, 482 (5th Cir. 2001). Plaintiff points to no authority requiring Presidio County to raise each and every potential version of the same legal argument in a judgment as a matter of law in order to raise it in a motion for judgment notwithstanding the verdict.

Similar to *Giles,* whether the Commissioners Court had retaliatory motive was well-litigated. Both parties briefed it and the Court tendered a summary judgment ruling on this issue before trial. *Id*. In addition, the issue was raised on direct and cross-examination of almost every witness at trial. *See id*. Plaintiff could not have been unfairly surprised by Defendant's

motion for judgment notwithstanding the verdict on this issue after judgment. *See id*. at 483 (applying the *Boeing* standard to legal issue despite party's failure to strictly comply with Rule 50(b)). Plaintiff's attempt to "get out of jail free" on a procedural technicality should be denied.

From a substantive perspective, Plaintiff's reliance on *Howell* and *Monell* is misplaced. Neither case supports Plaintiff's argument that the evidence at trial established the Commissioners' Court retaliatory motive. In *Howell*, Police Chief Caldwell who purportedly "harbored retaliatory animus" **made the recommendation that Howell be fired**. *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). In determining the town of Ball ratified such recommendation, the Fifth Circuit relied on precedent that "if a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality." *See id*. (citing *Culbertson v. Lykos*, 790 F.3d 608, 621 (5th Cir. 2015)). **There is no evidence Frances Garcia made any recommendation to the Commissioners Court whatsoever that the OMB should be eliminated.** Accordingly, Plaintiff's assertion that the "evidence in this case is similar to *Howell*" is misleading. The distinction that makes a <u>huge</u> difference is the recommendation by the purported retaliatory actor to the decision maker, evidence that is simply not present in this case. As a result, it is indeed an unprecedented leap in authority for Plaintiff to ask this Court to rely on *Howell* to determine the Presidio County Commissioners Court had retaliatory motive.

Plaintiff's interpretation of *Monell* is similarly misplaced. For Plaintiff's authority to be applicable, there must first be sufficient evidence that the Commissioners Court itself had retaliatory motive. <u>There is not</u>. The only evidence of retaliatory motive presented at trial consisted solely of speculation, conjecture and courthouse rumors by Plaintiff and her political

allies.  This evidence is not sufficient to establish retaliatory motive on behalf of the county commissioners as a body and Plaintiff has provided no authority to the contrary.

For Plaintiff's position to be correct regarding *Monell*, there also must have been evidence that Frances Garcia was a policymaker for the decision to eliminate the OMB.  <u>Again, there is not</u>.  The undisputed evidence presented at trial clearly establishes that Frances Garcia was <u>not</u> a commissioner and did <u>not</u> supervise the OMB or Plaintiff.  Plaintiff continues to point to testimony from Commissioner Vasquez that he would not have put the item on the agenda if the County Treasurer's office could not assume part of the OMB duties.  Plaintiff conveniently leaves out the second part of Commissioner Vasquez's testimony that he also would not have put the item on the agenda if the County Auditor's office could not assume part of the OMB duties.  Accordingly, it is factually inaccurate for Plaintiff to continue to contend that elimination of the OMB was "contingent" on Frances Garcia's approval.  In doing so, Plaintiff is misleading this Court by not telling the entire story.  This omission is fatal to Plaintiff's position regarding *Monell* and this Court should ignore Plaintiff's argument in that regard.

B.     **PLAINTIFF CONTINUES TO IMPROPERLY RELY ON *BURLINGTON* TO SUPPORT AN ADVERSE EMPLOYMENT CLAIM**

Plaintiff's assertion that the *Burlington* standard should apply is not supported by the authority Plaintiff cites.  In *Garrett v. Judson Indep. Sch. Dist.*, the plaintiff's claims were based on violations of the Texas whistleblower statute.  299 Fed. App'x 337, 346 (5th Cir. 2008).  The Fifth Circuit failed to raise *Burlington* in any context in that opinion or discuss the adverse employment standard.  *See id*.  Additionally, *Garrett* was decided after the Fifth Circuit's pronouncement in *DePree* that it had not formally applied *Burlington* to First Amendment retaliation claims.  *Simonelli v. Fitzgerald*, which is not binding on this Court, reached the same

incorrect conclusion Plaintiff reaches based on the Court's ruling in *Garrett* and a Second Circuit decision adopting *Burlington* into its Section 1983 jurisprudence. *See Simonelli v. Fitzgerald*, No. SA-07-CA-360, 2009 U.S. Dist. LEXIS 110782, at *16 (W.D. Tex. 2009).

In *Miles v. Beckworth*, the Court pointed to "testimonial evidence provided by Beckworth where he asserted that "the buck stops with [him]" with respect to terminating Miles' position." 455 Fed. App'x 500, 503 (5th Cir. 2011). Beckworth requested to transfer Plaintiff to a different department and Plaintiff subsequently received a letter ordering her to leave the department. *See id*. In this dispute, there is no evidence that a supervisor of Plaintiff's requested to transfer her to a different department or that she received any letter or instruction ordering her to leave. To the contrary, she voluntarily sought a position in another department with the county six weeks prior to the date the OMB was scheduled to be eliminated. Accordingly, *Miles* does not support Plaintiff's position here. Plaintiff's other cases are not from the Fifth Circuit and there is no indication either case has been adopted by the Fifth Circuit. *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon County*, 587 F.3d 1223, 1237 (10th Cir. 2009); *Zelnik v. Fashion Inst. Of Tech.*, 464 F.3d 217, 222 (2nd Cir. 2006).

As asserted in Presidio County's Motion for Directed Verdict and Motion for Summary Judgment, Dkt. 16, p. 4, the discrimination cases under Title VII and other statutes are also distinguishable and therefore insufficient to establish *Burlington* should apply. *See Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed. App'x 290, 394 (5th Cir. 2008) (suit for race discrimination and retaliation under Title VII of the Civil Rights Act as well as for age discrimination, retaliation and failure to promote under the Age Discrimination in Employment Act); *see also Guerin v. Pointe Coupee Parish Nursing Home*, 246 F. Supp. 2d 488, 498 (M.D. La. 2009) (suit for Title

VII race discrimination claim); *see also Moore v. Valic*, 2006 WL 2671941, at *10 (W.D. Tex. 2006) (suit for sex discrimination and retaliation in violation of Title VII and age discrimination in violation of the Age Discrimination in Employment Act of 1967); *see also Pierre v. RBC Liberty Life Ins.*, No. 05-1042-C, 2007 WL 2071829 (M.D. La. July 13, 2007) (suit for violation of the Age Discrimination in Employment Act and race discrimination in violation of Title VII). Plaintiff cites no authority for her proposition that this Court should apply *Burlington* to this case. Notably, Plaintiff's request to apply the *Burlington* standard has already been denied by this Court during trial and excluded from the jury charge.

Plaintiff cites no authority for her contention that Plaintiff's subjective opinions about the level of prestige of her new position is sufficient to establish an adverse employment action under *Serna* or any other Fifth Circuit case. All of the evidence referenced in Plaintiff's Response came from Plaintiff's subjective testimony. As stated by the Fifth Circuit in *Serna*, this "personal preference" is insufficient.

Plaintiff also cites no authority to support her proposition that her voluntary decision to seek a new position six weeks prior to the actual elimination of the OMB is an adverse employment action under Fifth Circuit precedent. And Plaintiff cites no case—under any standard—holding that elimination of a position constitutes an adverse decision *when the employer is actively considering other positions to transfer Plaintiff when the Plaintiff voluntarily leaves*. In asking this Court to determine it was an adverse employment action, Plaintiff seeks a decision on an issue of first impression. Viewed by controlling standards, this Court should err on the side of caution and determine Plaintiff did not suffer an adverse

employment action based on *Serna* and other Fifth Circuit precedent requiring more than Plaintiff's mere subjective opinion to make an adverse employment finding.

C.   **PLAINTIFF SKEWS AND MISCHARACTERIZES THE TESTIMONY TO FIT PLAINTIFF'S NARRATIVE**

Plaintiff's entire narrative is based on mischaracterization of evidence. The Response contains a bullet point list of "evidence" that is wholly unsupported by the trial testimony:

- Despite Plaintiff's contentions to the contrary, the issue of whether the OMB was necessary was raised prior to Plaintiff running for public office. Specifically, the issue was raised in 2017 by Commissioner Vasquez to other commissioners before Plaintiff announced in November 2017 she was running again. Additionally, the debate about whether such an office should even exist had been going on since the office was created based on the testimony of County Judge Guevara and the County Auditor.

- Plaintiff continues to assert that Frances Garcia "had the ability" and in fact "lobbied" the county commissioners despite a lack of credible evidence to support this argument. Notably, none of Plaintiff's own witnesses ever provided any testimony based on personal knowledge that Frances Garcia attempted to influence the County Commissioners to eliminate the OMB out of retaliation because Plaintiff ran for County Treasurer.

- Plaintiff continues to argue Commissioner Vasquez would not have gone forward with the decision to eliminate the OMB if Frances Garcia had not agreed to it. As referenced herein, Plaintiff is only telling one-half of the full story and misleading the Court.

- The departments the County Judge suggested to eliminate were not duplicative of any other existing departments. Elimination of the road and bridge department, for example, would have left the county without a similar department. This was not true of the OMB, which was duplicative of both the County Auditor and County Treasurer's office.

- Although Plaintiff went to pain-staking lengths to try and prove the County Treasurer and County Commissioners received pay raises after elimination of the OMB, such allegations misstate the evidence and wholly ignore the evidence regarding increase and decreases made in other departments.

Relying on the testimony of the two commissioners presented at trial who actually voted on this decision, this Court should disregard the jury's verdict and accept Presidio County's *Mt. Healthy* defense that the OMB was eliminated as a cost-savings measure because it was duplicative of two other county offices. While Plaintiff's "amiga and cousin of her prima" rouse may have fooled the jury, it should not have the same impact on this Court when viewing all of the evidence as a whole.

**D.    PLAINTIFF IS NOT ENTITLED TO COMPENSATORY DAMAGES**

At the outset, whether Plaintiff is entitled to mental anguish damages should not be a surprise to Plaintiff. The issue was discussed in Plaintiff's deposition at length and Plaintiff was asked about her mental anguish damages on both direct and cross examination at trial. Accordingly, the purpose of Rule 50(b) has not been thwarted and this Court should consider Presidio County's argument. *Giles*, 245 F.3d at 483 (applying the *Boeing* standard to legal issue

despite party's failure to strictly comply with Rule 50(b)).  Plaintiff's attempt to "get out of jail free" on a procedural technicality should be denied.

Further, the evidence does not support a $500,000 award as a matter of law.  The medical evidence at trial established that each of the symptoms Plaintiff complains about is linked to a pre-existing condition that Plaintiff had prior to the elimination of the OMB.  Her medical records objectively proved that she had high blood pressure, heart issues and swelling of the feet at least eight months prior to the elimination of the OMB.  Importantly, Plaintiff provided no medical testimony whatsoever to link the elimination of the OMB to any of Plaintiff's symptoms. Additionally, Plaintiff admits that she never sought psychological treatment or counseling of any type.

In *Hitt v. Connell*, the plaintiff, similar to the Plaintiff here, testified that his discharge was emotionally trying and he was depressed and embarrassed.  301 F.3d 240, 251.  It made him very defensive and the impact it had on his reputation affected him emotionally.  *Id*.  Based on Plaintiff's own Response, Plaintiff similarly testified that she "became emotional," became "moody," "lost self-confidence" and experienced "stress and depression."  *See* Response, p. 17.  While Plaintiff may have used different words to describe how she felt, the underlying themes of embarrassment, depression and emotional stress are similar to the testimony in *Hitt* that the Fifth Circuit determine was insufficient for an award of mental anguish.  This is particularly true given the fact that all of the physical symptoms Plaintiff claimed were caused by elimination of the OMB were actually occurring months prior to the Commissioners Court's decision.

The cases Plaintiff cites are not only distinguishable but also very telling with respect to why this Court should closely scrutinize the jury's award.  In *Turead v. Grambling State Univ.*,

the Court found that damages for emotional distress *may* be appropriate where the plaintiff suffers sleeplessness, anxiety, stress, marital problems and humiliation. 294 Fed. App'x 909, 916 (5th Cir. 2008). Contrary to Plaintiff's position, the Fifth Circuit's holding was not that mental anguish damages are a foregone conclusion if any of these symptoms are present. *Id*. Additionally, and most notably, the Fifth Circuit determined that the jury's award of $140,000 in compensatory damages was "at the high end of the spectrum" based on a survey of other cases from the circuit. *Id*. The jury in this case awarded over three times that amount and Plaintiff's testimony does not even establish all of the manifestations present in *Turead*.

In *Salinas v. O'Neill*, the plaintiff testified he had a high level of paranoia regarding further retaliation. 286 F.3d 827, 831 (5th Cir. 2002). He also testified to using "lots" of sick leave and visiting physicians more than seventy times and spoke of his deteriorating relations with his wife and son. *Id*. He had $16,000 in medical bills. *Id*. Plaintiff here presented no evidence of medical bills. Despite the testimony presented in *Salinas*, including actual costs for medical bills, the Court determined there was not sufficient evidence to support the jury's award of $300,000 and remitted the award to $150,000. *Id*. at 833. Again, the amount of compensatory damages awarded to Plaintiff in this case is three times the remitted amount awarded by the Fifth Circuit in *Salinas*.

The jury in *Migis v. Pearle Vision* awarded $5,000 in compensatory damages based on Plaintiff's evidence that she suffered low self-esteem and financial hardships with a new baby after termination. 135 F.3d 1041, 1046 (5th Cir. 1998). She described she suffered "stress attacks or anxiety attacks," "marital hardships" and "major stress" as well as "lots of crying and sleeplessness." *See id*. The Fifth Circuit affirmed the $5,000 award based on those symptoms

and manifestations of stress. *Id*. Notably, Migis' manifestations were much worse than anything Plaintiff described and yet the jury awarded Plaintiff 100 times the amount of Migis' award. Based on Fifth Circuit precedent, including the cases cited by Plaintiff, this Court should determine that Plaintiff is not entitled to such an excessive award based on her testimony.

## CONCLUSION AND PRAYER

Defendant Presidio County requests this Court to grant its motion for judgment notwithstanding the verdict and for such other relief to which Presidio County is entitled.

>Respectfully submitted,
>
>JACKSON WALKER L.L.P.
>136 W. Twohig Ave., Suite B
>San Angelo, Texas 76903
>(325) 481-2560
>(325) 481-2585 - Facsimile
>
>By: /s/ Jon Mark Hogg
>    Jon Mark Hogg
>    State Bar No. 00784286
>    jmhogg@jw.com
>    Amanda N. Crouch
>    State Bar No. 24077401
>    acrouch@jw.com
>
>ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that on the 30th day of August, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notice of such filing to all attorneys of record on file.

>/s/ Jon Mark Hogg
>Jon Mark Hogg